# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 14-40403

———————

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2015

Lyle W. Cayce
Clerk

RONALD S. HINES, Doctor of Veterinary Medicine,

Plaintiff - Appellee

v.

BUD E. ALLDREDGE, JR., Doctor of Veterinary Medicine, in his official capacity as President of the Texas State Board of Veterinary Medical Examiners; J. TODD HENRY, Doctor of Veterinary Medicine, in his official capacity as Vice President of the Texas State Board of Veterinary Medical Examiners; JOE MAC KING, Doctor of Veterinary Medicine, in his official capacity as Secretary of the Texas State Board of Veterinary Medical Examiners; RICHARD S. BONNER, JR., in his official capacity as Member of the Texas State Board of Veterinary Medical Examiners; JANIE CARPENTER, in her official capacity as Member of the Texas State Board of Veterinary Medical Examiners; JOHN D. CLADER, in his official capacity as Member of the Texas State Board of Veterinary Medical Examiners; MANUELA MAMIE SALAZAR-HARPER, in her official capacity as Member of the Texas State Board of Veterinary Medical Examiners; DAVID W. ROSBERG, JR., in his official capacity as Member of the Texas State Board of Veterinary Medical Examiners; CHAD UPHAM, in his official capacity as Member of the Texas State Board of Veterinary Medical Examiners,

Defendants - Appellants

———————

Appeals from the United States District Court
for the Southern District of Texas

———————

Before HIGGINBOTHAM, SMITH, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Texas requires veterinarians to conduct a physical examination of an animal or its premises before they can practice veterinary medicine with respect to that animal. In this case, we must decide whether this requirement violates the First or Fourteenth Amendment. We conclude it offends neither.

## I.

## A.

Ronald Hines is a Texas-licensed veterinarian who has practiced since the mid-1960s. He worked mainly in traditional veterinary practices until he retired in 2002. After his retirement, he founded a website and began to post articles about pet health and care. These general writings soon turned to more targeted guidance and, as he acknowledged in his complaint, he began "to provide veterinary advice to specific pet owners about their pets." This advice was given via email and telephone calls, and Hines "never physically examine[d] the animals that are the subject of his advice," though he did review veterinary records provided by the animal owners.

While the full scope of Hines's advice is not entirely clear from the record, it was "about particular animals," and included providing "qualified veterinary advice" to individuals who lack access to veterinary care, evaluating conflicting diagnoses or inappropriate drug prescriptions, and referring patients to appropriate local veterinarians. Hines charged a flat fee of fifty-eight dollars for his veterinary advice, though he would waive this fee if a pet owner could not afford to pay. He did, however, refuse to give advice if he felt that a physical examination was required, and he did not prescribe medication.

What is clear – and undisputed – is that Hines's remotely provided services constituted the practice of veterinary medicine.[1] This was a problem.

---

[1] "Practice of veterinary medicine" means:

(A) the diagnosis, treatment, correction, change, manipulation, relief, or prevention of animal disease, deformity, defect, injury, or other physical condition, including the

No. 14-40403

Under Texas law "[a] person may not practice veterinary medicine unless a veterinarian-client-patient relationship exists."[2] That "relationship exists if the veterinarian:"

> (1) assumes responsibility for medical judgments regarding the health of an animal and a client, who is the owner or other caretaker of the animal, agrees to follow the veterinarian's instructions;

> (2) possesses sufficient knowledge of the animal to initiate at least a general or preliminary diagnosis of the animal's medical condition; and

> (3) is readily available to provide, or has provided, follow-up medical care in the event of an adverse reaction to, or a failure of, the regimen of therapy provided by the veterinarian.[3]

In order to "possess[] sufficient knowledge of the animal" the veterinarian must have "recently seen, or [be] personally acquainted with, the keeping and care of the animal by: (1) examining the animal; or (2) making medically appropriate and timely visits to the premises on which the animal is kept."[4] That examination must be in person – the statute is explicit that "[a] veterinarian-client-patient relationship may not be established solely by

---

> prescription or administration of a drug, biologic, anesthetic, apparatus, or other therapeutic or diagnostic substance or technique;

> (B) the representation of an ability and willingness to perform an act listed in Paragraph (A);

> (C) the use of a title, a word, or letters to induce the belief that a person is legally authorized and qualified to perform an act listed in Paragraph (A); or

> (D) the receipt of compensation for performing an act listed in Paragraph (A).

Tex. Occ. Code § 801.002(5).  Hines admits that his advice meets all four criteria.

[2] Tex. Occ. Code. § 801.351(a).

[3] *Id.*

[4] *Id.* § 801.351(b).

telephone or electronic means."[5]    We term this the "physical examination requirement."

In 2012, the Texas Board of Veterinary Medical Examiners (the "Board") informed Hines that by providing veterinary advice without a physical examination, he had violated Texas law.  Hines eventually agreed to: abide by the relevant state laws, including the physical examination requirement, one year of probation; a stayed suspension of his license; a $500 fine; and to retake the jurisprudence portion of the veterinary licensing exam.

### B.

Hines filed suit in federal court, seeking declaratory and injunctive relief.  He argued that the physical examination requirement violates his First Amendment right to free speech as well as his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[6]    The Board moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The district court granted the Board's motion in part and denied it in part.  With respect to the equal protection claim, the court concluded that because the law did not discriminate on the basis of any suspect classification, the count was evaluated pursuant to rational basis review – and held that the physical examination requirement passed that deferential standard.  The court dismissed Hines's substantive due process claim for similar reasons.  The district court denied the motion to dismiss the First Amendment claims.  It recognized that states have broad power to regulate professionals, but determined that because the physical examination requirement "regulate[s] professional speech itself," it is subject to the First Amendment.  Relying on

---

[5] *Id.* § 801.351(c).

[6] Hines challenges only the physical examination requirement; the Board acknowledges that to the extent that Hines wants to provide general advice without regard to any specific animal, this would not constitute the "practice of veterinary medicine" and would not violate section 801.351.

## No. 14-40403

the Supreme Court's decision in *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*,[7] the court concluded that "[r]egulations on speech by licensed professionals in the context of a professional relationship must . . . be more than merely rational, they must be 'reasonable.'" Judged against this standard, and assuming all allegations to be true, the district court held that Hines had stated a plausible claim that the Board had infringed his First Amendment rights.

The Board moved under 28 U.S.C. § 1292(b) to certify for interlocutory review the district court's order granting in part and reversing in part the motion to dismiss. The district court granted the motion and certified the order. We granted the Board's timely petition to hear the appeal.

### II.

### A.

Under section 1292(b), we have appellate jurisdiction over the order certified to the court of appeals, in this case the order addressing the Board's motion to dismiss; our review is not limited to the controlling question of law formulated by the district court in its certification order.[8] We review "de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.'"[9] If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed.[10]

### B.

We begin – and end – our First Amendment analysis by recognizing the statute at issue in this case for what it is. The challenged state law prohibits

---

[7] 505 U.S. 833, 884 (1992) (plurality op.).

[8] *Yamah Motor Corp., U.S.A.* v. *Calhoun*, 516 U.S. 199, 204-05 (1996).

[9] *True* v. *Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (quoting *Stokes* v. *Gann*, 498 F.3d 483, 484 (5th Cir. 2007)).

[10] *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).

the practice of veterinary medicine unless the veterinarian has first physically examined either the animal in question or its surrounding premises. It does not regulate the content of any speech, require veterinarians to deliver any particular message, or restrict what can be said once a veterinary-client-patient relationship is established.

States have "broad power to establish standards for licensing practitioners and regulating the practice of professions."[11] Texas's requirement that veterinarians physically examine an animal or the animal's premises before treating it (or otherwise practicing veterinary medicine) falls squarely within this long-established authority, and does not offend the First Amendment.[12]

Nor does the fact that this rule may have some impact on the veterinarian's speech dictate a different result. The Supreme Court has long held that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."[13] Pursuant to this principle, there is a robust line of doctrine concluding that state regulation of the practice of a profession, even though that regulation may have an incidental impact on speech, does not violate the Constitution.

---

[11] *Gade* v. *Nat'l Solid Waste Mgm't Ass'n*, 505 U.S. 88, 108 (1992) (quoting *Goldfarb* v. *Va. State Bar*, 421 U.S. 773, 792 (1975)); *see also Graves* v. *State of Minn.*, 272 U.S. 425, 427 (1926); *Tex. Med. Providers Performing Abortion Servs.* v. *Lakey*, 667 F.3d 570, 584-85 (5th Cir. 2012) (Higginbotham, J., concurring) ("The doctor-patient relationship has long been conducted within the constraints of informed consent to the risks of medical procedures, as demanded by the common law, legislation, and professional norms.").

[12] *See, e.g.*, *Ohralik* v. *Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) (recognizing power of state "to regulate commercial activity deemed harmful to the public," notwithstanding that "speech is a component of that activity"); *Wollschlaeger* v. *Governor of Fla.*, 760 F.3d 1195, 1221-26 (11th Cir. 2014) (recognizing broad power of state to regulate professional conduct); *see also* Frederick Schauer, *The Boundaries of the First Amendment: A Preliminary Exploration of Constitutional Salience*, 117 Harv. L. Rev. 1765, 1783-84 (2004) (concluding that professional regulation has largely been seen as being beyond the scope of the First Amendment).

[13] *Sorrell* v. *IMS Health Inc.*, 131 S. Ct. 2653, 2664 (2011).

No. 14-40403

This principle is often linked to Justice White's concurrence in the result in *Lowe* v. *Securities & Exchange Commission*.[14]   There, Justice White, joined by Chief Justice Burger and Justice Rehnquist, concluded that "[j]ust as offer and acceptance are communications incidental to the regulable transaction called a contract, the professional's speech is incidental to the conduct of the profession.  If the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny."[15]   The idea that content-neutral regulation of the professional-client relationship does not violate the First Amendment has deep roots,[16] and has been embraced by many circuits.[17]

Our court's jurisprudence is consistent with this line of cases.  In *Daly* v. *Sprague*,[18] a challenge by a state-employed doctor to the temporary removal of his clinical privileges, we held that "[s]ince the state undoubtedly possessed the power to regulate nonspeech and nonassociation aspects of [the doctor's] professional actions, any incidental restrictions on his freedom of speech and association are not constitutionally invalid."[19]  We were not clear whether that power stemmed from the state's role as regulator of the practice of medicine or as the plaintiff-doctor's employer, so this case does not control our decision here, but the line of precedent discussed above suggests the former explanation.

---

[14] 472 U.S. 181, 211 (1985) (White, J., concurring in the result).

[15] *Id.* at 232.

[16] *See Thomas* v. *Collins*, 323 U.S. 516, 544-45 (1945) (Jackson, J., concurring).

[17] *See, e.g.*, *Moore-King* v. *Cnty. of Chesterfield, Va.*, 708 F.3d 560, 569-70 (4th Cir. 2013); *Locke* v. *Shore*, 634 F.3d 1185, 1191-92 (11th Cir. 2011); *Coggeshall* v. *Mass Bd. of Registration of Psychologists*, 604 F.3d 658, 667 (1st Cir. 2010); *Nat'l Ass'n for Advancement of Psychoanalysis* v. *Cal Bd. of Psychology*, 228 F.3d 1043, 1056 (9th Cir. 2000); *Lawline* v. *Am. Bar Ass'n*, 956 F.2d 1378, 1386 (7th Cir. 1992).

[18] 742 F.2d 896 (5th Cir. 1984).

[19] *Id.* at 899.

No. 14-40403

Whether Hines's First Amendment rights are even implicated by this regulation is far from certain. In defining the permitting practice of veterinary medicine for which its license is required, Texas only imposes a narrow requirement upon the veterinarian. But surely, if this restriction on the veterinarian's medical practice is within its scope, it is but incidental to the constraint, and denies the veterinarian no due First Amendment right.[20]

C.

The district court also dismissed Hines's equal protection and due process claims, concluding that the physical examination challenge is rationally related to a legitimate government interest. We agree.

Because Hines is not a member of a protected class, and the classification does not infringe upon fundamental constitutional rights, we apply rational basis review. "Under rational basis review, differential treatment 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"[21] Here, the requirement that veterinary care be provided only after the veterinarian has seen the animal is, at a minimum, rational: it is reasonable to conclude that the quality of care will be higher, and the risk of misdiagnosis and improper treatment lower, if the veterinarian physically examines the animal in question before treating it.[22] The same rationality

---

[20] Contrary to Hines's assertions, two Supreme Court cases do not call this conclusion into question. In *Legal Services Corporation* v. *Velazquez*, 531 U.S. 533 (2001), the Court struck down an "impermissible viewpoint-based" regulation, *id.* at 537, which is easily distinguishable from the content-neutral conduct regulation at issue here. Similarly, in *Holder* v. *Humanitarian Law Project*, 561 U.S. 1 (2010), the Court focused on a law which "regulates speech on the basis of its content," *id.* at 27, and did not implicate questions of the content-neutral regulation of the practice of medicine that are relevant to this appeal.

[21] *Madriz-Alvarado* v. *Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004) (quoting *FCC* v. *Beach Commc'ns*, 508 U.S. 307, 313 (1993)).

[22] While not decisive, the fact that the physical examination requirement was imposed following a change to the Model Veterinary Practice Act of the American Veterinary Medical Association further supports the conclusion that the regulation is rational.

No. 14-40403

standard applies to Hines's due process claim,[23] and we reject that argument for the same reasons.

### III.

We REVERSE the district court's denial of the defendants' motion to dismiss the plaintiff's First Amendment counts and AFFIRM the district court's granting of the defendants' motion to dismiss the plaintiff's Fourteenth Amendment counts.  We REMAND for the entry of judgment in favor of the defendants.

---

[23] *See Dittman* v. *California*, 191 F.3d 1020, 1031 (9th Cir. 1999).