# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60053

United States Court of Appeals
Fifth Circuit

**FILED**

February 14, 2020

Lyle W. Cayce
Clerk

VIZALINE, L.L.C.; BRENT MELTON,

      Plaintiffs-Appellants

v.

SARAH TRACY, P.E.; BILL MITCHELL, P.E./P.S.; JOSEPH FRANKLIN LAUDERDALE, P.E./P.S.; JOSEPH E. LAUDERDALE, P.E./P.S.; STEVEN A. TWEDT, P.E.; DOCTOR DENNIS D. TRUAX, P.E.; RICHARD THOMAS TOLBERT, P.S.; JOE W. BYRD, P.S.; SHANNON D. TIDWELL, P.S.,

      Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before OWEN, Chief Judge, and BARKSDALE and DUNCAN, Circuit Judges.
STUART KYLE DUNCAN, Circuit Judge:

    We address a First Amendment challenge to Mississippi's occupational-licensing regime for surveyors.

    Vizaline, L.L.C., converts existing legal descriptions of real property into computer-generated drawings and then sells them to community banks as a low-cost alternative to formal land surveys. Believing Vizaline's practice constitutes the unlicensed practice of surveying, the Mississippi Board of Licensure for Professional Engineers and Surveyors sued Vizaline to enjoin its business and disgorge its profits. In turn, Vizaline sued the Board, alleging

No. 19-60053

that as applied to its practice, Mississippi's surveyor-licensing requirements violate the First Amendment. *See, e.g.*, *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011) (explaining the Supreme Court "has held that the creation and dissemination of information are speech within the meaning of the First Amendment"). The Board moved to dismiss on the ground that occupational-licensing requirements like Mississippi's are immune from First Amendment scrutiny. The district court agreed and dismissed Vizaline's suit.

The Supreme Court has recently disavowed the notion that occupational-licensing regulations are exempt from First Amendment scrutiny. In overturning the "professional speech" doctrine deployed by some circuits, including ours,[1] the Court rejected any theory of the First Amendment that "gives the States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Nat'l Inst. of Family & Life Advocates v. Becerra* [*NIFLA*], 138 S. Ct. 2361, 2375 (2018). The district court's ruling in this case—that Mississippi's licensing requirements for surveyors do not trigger any First Amendment scrutiny—was inconsistent with *NIFLA*. We therefore reverse and remand for further proceedings.

I.

According to the complaint, plaintiff-appellant Vizaline, L.L.C.,[2] converts existing metes-and-bounds[3] descriptions of real property into "simple map[s]." It does so through a computer program that overlays lines onto

---

[1] Our decision in *Hines v. Alldredge*, 783 F.3d 197, 202 (5th Cir. 2015), adopted the professional speech doctrine. As explained below, *Hines*' reasoning does not survive *NIFLA*.

[2] Brent Melton, one of Vizaline's two owners, is also a plaintiff-appellant. We refer to Melton and Vizaline collectively as "Vizaline."

[3] As the complaint explains, "[m]etes and bounds descriptions are established by surveyors" and "are used as legal descriptions for property in deeds, easements, and other legal documents." *Accord Metes and bounds*, Black's Law Dictionary (10th ed. 2014) (defining "metes and bounds" as "[t]he territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties").

No. 19-60053

satellite images. Vizaline sells these maps exclusively to community banks who would otherwise have to obtain costly surveys of small, "less-expensive" properties that serve as loan collateral. Vizaline does not "establish or purport to establish metes and bounds descriptions of property," "locate control monuments[,] or measure items that are not defined within the legal description." Nor does it "locate, relocate, establish, reestablish, lay out[,] or retrace any property boundary or easement." The only thing Vizaline does is make "simple map[s]" from legal descriptions of real property and sell them to community banks. Furthermore, Vizaline "does not market its services as a survey or as a substitute for surveys" and alerts its customers that its product "is not a Legal Survey" and is not "intended to be or replace a Legal Survey." When Vizaline encounters potential discrepancies in a drawing—for instance, if the metes-and-bounds descriptions do not form a closed shape—Vizaline recommends its customers resolve the issue by hiring licensed surveyors to perform a formal survey. Vizaline has six employees and operates in five states, serving over thirty community banks.

In May 2015, the Mississippi Board of Licensure for Professional Engineers and Surveyors, whose members are the defendant-appellants here,[4] took notice of Vizaline's practice and "called on Vizaline to revise its website, not market to the general public, and clarify that Vizaline's work product is not intended to be used as a survey." Vizaline complied.

Two years later, the Mississippi Attorney General, on behalf of the Board, sued Vizaline in state court. According to the Board, Vizaline is engaged in the practice of surveying without a license, which is a civil and criminal offense. *See* Miss. Code § 73-13-95 ("Any person who shall practice, or offer to practice, surveying in this state without being licensed . . . shall be guilty of a

---

[4] We refer to the Board and its members collectively as "the Board."

misdemeanor . . . ."); *id.* (providing for "criminal penalties" in addition to civil penalties). The Board alleges that Vizaline violated Mississippi Code § 73-13-95(c), which prohibits "receiv[ing] any fee" for performing "any service, work, act or thing which is any part of the practice of surveying" without a surveying license.[5] The Board's lawsuit, which is ongoing, seeks an injunction against Vizaline's practice and disgorgement of all its compensation.

In addition to defending against the Board's lawsuit, Vizaline filed this action,[6] claiming application of § 73-13-95 (the "licensing requirements") to its practice violates the First Amendment. Vizaline argues that its practice—

---

[5] As used in this provision, "the practice of surveying" means

> providing professional services such as consultation, investigation, testimony evaluation, expert technical testimony, planning, mapping, assembling and interpreting reliable scientific measurement and information relative to the location, size, shape or physical features of the earth, improvements on the earth, the space above the earth, or any part of the earth, utilization and development of these facts and interpretation into an orderly survey map, plan or report and in particular, the retracement of or the creating of land boundaries and descriptions of real property.

Miss. Code § 73-13-71(4). Among other things, the term includes:

> (a) Locating, relocating, establishing, reestablishing, laying out or retracing any property boundary or easement[,]
>
> (b) Making any survey for the subdivision of any tract of land, including rights-of-way and easements[,]
>
> (c) Determining, by the use of principles of surveying, the position for any survey monument or reference point; or setting, resetting or replacing any such monument or reference point, commonly known as control surveys[,] [and]
>
> (d) Creating, preparing or modifying electronic or computerized data, including land information systems and geographic information systems, relative to the performance of the activities in the above-described paragraphs (a) through (c).

*Id.*

[6] Vizaline's action was initially postured as a third-party complaint against the Board's members. This is because the plaintiff in the Board's lawsuit is the Board itself, which is not a "person" under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (state agencies are not persons).

generating "simple map[s]" using existing legal property descriptions and selling those "visual depictions" to customers—is dissemination of information, which is speech under the First Amendment. *See Sorrell*, 564 U.S. at 570 (noting "creation and dissemination of information are speech for First Amendment purposes" (citing *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001)). Vizaline likens its visual depictions to matter it contends the Supreme Court has treated as "speech," such as information pharmacies gather regarding physicians' prescribing habits. *See id.* at 558. Vizaline also points out that the fact that it sells this speech does not "diminish[]" its First Amendment protection. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988). Along the same lines, Vizaline highlights the Supreme Court's recent reaffirmance of the principle that "provid[ing] specialized advice" qualifies as protected speech. *See NIFLA*, 138 S. Ct. at 2374 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27–28 (2010)).[7]

The Board moved to dismiss Vizaline's complaint, citing the states' "broad power to establish standards for licensing practitioners and regulating the practice of professions." *See Hines v. Alldrege*, 783 F.3d 197, 201 (5th Cir. 2015). The Board argued that under *NIFLA*, the licensing requirements "regulate professional conduct" which "incidentally involves speech." The district court agreed, concluding that regulations that dictate "who is permitted to provide certain professional services and who is not . . . do not trigger First Amendment scrutiny." Analyzing Mississippi's licensing requirements as occupational-licensing regulations, the district court distinguished *NIFLA* and held that the requirements merely "incidentally

---

[7] Because our holding is cabined to reversing the district court's decision that occupational-licensing requirements are immune from First Amendment scrutiny, we do not decide whether, or to what extent, Vizaline's practice involves protected speech.

infringed upon" Vizaline's speech because they only "determin[e] *who* may engage in certain speech." The court therefore granted the Board's motion to dismiss. Vizaline timely appealed.

## II.

"We review *de novo* a district court's dismissal under Rule 12(b)(6)." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (citation omitted).

## III.

On appeal, Vizaline argues the district court erred in holding that occupational-licensing restrictions are categorically exempt from First Amendment scrutiny. We agree.

The district court's holding that occupational-licensing provisions "do not trigger First Amendment scrutiny" is contrary to the Supreme Court's decision in *NIFLA*, 138 S. Ct. 2361. *NIFLA* makes clear that occupational-licensing provisions are entitled to no special exception from otherwise-applicable First Amendment protections. Rather, the relevant question is whether, as applied to Vizaline's practice, Mississippi's licensing requirements regulate only speech, restrict speech only incidentally to their regulation of non-expressive professional conduct, or regulate only non-expressive conduct. *Id.* at 2372–73. The district court did not perform this analysis, and it should do so in further proceedings on remand.

*NIFLA* involved a First Amendment challenge to the California Reproductive Freedom, Accountability, Comprehensive Care, and Transparency Act (the "FACT Act"). *Id.* at 2368. The FACT Act required certain clinics that serve pregnant women to notify their patients that "California provides free or low-cost services, including abortions, and give them a phone number to call." *Id.* Several pregnancy centers challenged the FACT Act on First Amendment grounds. *Id.* at 2370. Applying a "lower level

of scrutiny" to the notice requirements, the district court and the Ninth Circuit rejected the challenge by applying the so-called "professional speech" doctrine. *Id.* (citations omitted; cleaned up).

This doctrine had been deployed by some circuits to "except" from normal First Amendment scrutiny regulations of speech by "professionals." *Id.* at 2371. "Professionals" were "individuals who provide personalized services to clients and who are subject to 'a generally applicable licensing and regulatory regime.'" *Id.* (quoting *Moore-King v. Cty. of Chesterfield*, 708 F.3d 560, 569 (4th Cir. 2013)). "Professional speech" was, in turn, "any speech by these individuals that is based on their expert knowledge and judgment," *id.* (quoting *King v. Governor of N.J.*, 767 F.3d 216, 232 (3d Cir. 2014)) (cleaned up), or that occurred "within the confines of the professional relationship," *id.* (quoting *Pickup v. Brown*, 740 F.3d 1208, 1227–29 (9th Cir. 2014) (cleaned up). The upshot of the doctrine was that "a state's regulation of a profession raises no First Amendment problem where it amounts to generally applicable licensing provisions affecting those who practice the profession." *Moore-King*, 708 F.3d at 569 (citations omitted; cleaned up); *accord Accountant's Soc. of Va. v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988) ("A statute that governs the practice of an occupation is not unconstitutional as an abridgment of the right to free speech, so long as any inhibition of that right is merely the incidental effect of observing an otherwise legitimate regulation." (citation omitted; cleaned up)).

In *NIFLA*, the Supreme Court rejected the professional speech doctrine, holding instead that the FACT Act's notice requirements were subject to typical First Amendment scrutiny. *NIFLA*, 138 S. Ct. at 2370–76. Specifically, the Court rejected the Third, Ninth, and Fourth Circuits' demarcation of "'professional speech' as a separate category of speech that is subject to different rules." *Id.* at 2371 (citing *King*, 767 F.3d at 232; *Pickup*, 740 F.3d at

1227–29; and *Moore-King*, 708 F.3d at 568–70). While it did not "foreclose the possibility that some such reason exists" for treating professional speech differently, *id.* at 2375, the Court explained that "[s]peech is not unprotected merely because it is uttered by 'professionals.'" *Id.* at 2371–72. A professional speech exception, it warned, would "give[] the States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Id.* at 2375.

Instead of recognizing a new category of unprotected speech, the Court adhered to the traditional conduct-versus-speech dichotomy. *See id.* at 2374–76 (collecting decisions and observing that "this Court's precedents have long drawn" the "line between speech and conduct"). "[P]rofessionals are no exception to th[e] rule" that states may enact "regulations of professional conduct that incidentally burden speech." *Id.* This was merely an application of the general principle that legislatures may "impos[e] incidental burdens on speech" by regulating "commerce or conduct." *Id.* (citing *Sorrell*, 564 U.S. at 567). Applying that analysis, the Court held that the Act's notice requirements were a content-based restriction on speech that failed to satisfy even lesser scrutiny for conduct regulations that incidentally burden speech. *See id.* at 2375–76 (applying "intermediate scrutiny" and concluding the Act was "not sufficiently drawn to achieve" any substantial state interest).

In dismissing Vizaline's free speech challenge to Mississippi's surveyor-licensing requirements, the district court erred in distinguishing *NIFLA*. The court distinguished *NIFLA* on the ground that it did not involve occupational-licensing restrictions, *i.e.*, "restrictions on who may engage in a profession." In the court's view, occupational-licensing restrictions—like Mississippi's surveyor regulations—restrict only conduct, not speech. The court therefore held that Mississippi's regulations only "incidentally infringed upon" Vizaline's speech because they merely "determin[e] *who* may engage in certain speech."

8

The court therefore applied *no* First Amendment scrutiny to the surveyor-licensing requirements.

This analysis runs afoul of *NIFLA*. By discarding the professional speech doctrine, *NIFLA* rejected the proposition that First Amendment protection turns on whether the challenged regulation is part of an occupational-licensing scheme. *See* 138 S. Ct. at 2375. The Court overruled circuit decisions that had exempted regulations from First Amendment scrutiny merely because they arose from "generally applicable licensing provisions affecting those who practice the profession." *Moore-King*, 708 F.3d at 569 (citations omitted; cleaned up). In other words, application of the now-discarded professional speech doctrine often went hand-in-hand with occupational-licensing regimes. *See, e.g.*, *id.* at 569–70 (applying doctrine to a "licensing and regulatory regime for fortune tellers"); *Bowman*, 860 F.2d at 603 (addressing statute governing "licensing and regulating the profession of accountancy in Virginia"). Accordingly, the Court warned that the doctrine gave "the States unfettered power to reduce a group's First Amendment rights *by simply imposing a licensing requirement.*" 138 S. Ct. at 2375 (emphasis added); *see also id.* (observing that courts applying the professional speech doctrine had held a "profession" means simply that the activity "involves personalized services and *requires a professional license from the State*" (emphasis added)). The Court thus made clear that First Amendment scrutiny does not turn on whether censored speakers are professionals, licensed or not. Instead, *NIFLA* reoriented courts toward the traditional taxonomy that "draw[s] the line between speech and conduct." *Id.* at 2373; *see also, e.g.*, *Sorrell*, 564 U.S. at 567 (explaining that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech" (citing *Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 62 (2006); *R.A.V. v. St. Paul*, 505 U.S. 377, 385 (1992); *Giboney v. Empire Storage & Ice*

*Co.*, 336 U.S. 490, 502 (1949))).[8]

The district court also relied on our pre-*NIFLA* decision in *Hines v. Alldredge* for the proposition that "generally applicable licensing provisions limiting the class of persons who may practice the profession" are not "subject to First Amendment scrutiny." 783 F.3d at 202 (citation omitted). Vizaline argues that *NIFLA* abrogated *Hines* to the extent that *Hines* relied on the professional speech doctrine. We agree.

*Hines* rejected a First Amendment challenge to Texas's requirement that a veterinarian physically examine an animal before treating it. *Id.* at 198, 202. Our court "beg[a]n—and end[ed]—[its] First Amendment analysis" with the principle that "States have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Id.* at 201 (citations omitted; cleaned up). It observed that "[i]f the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny." *Id.* at 202 (citation omitted). *Hines* further noted that different treatment for "content-neutral regulation of the professional-client relationship . . . has been embraced by many circuits." *Id.* (citing, *inter alia*, *Moore-King*, 708 F.3d at 569–70). Finally,

---

[8] Defending the district court's opinion, the Board cites the plurality opinion in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992) (opinion of O'Connor, Kennedy, and Souter, JJ.), for the proposition that "there is no need for consideration of" whether the practice is "conduct" or "speech" or whether any burden is "incidental" or "non-incidental." But *NIFLA* also forecloses that argument. *NIFLA* specifically treated *Casey* as an example of lesser scrutiny given to "regulations of professional *conduct that incidentally burden speech*." 138 S. Ct. at 2373 (emphasis added). According to *NIFLA*, Pennsylvania's requirement that abortion providers provide informed consent "regulated speech only as part of" the conduct involved in practicing medicine. *Id.* (citing *Casey*, 505 U.S. at 884) (emphasis in original). It was that characteristic, not special treatment for occupational-licensing restrictions, that saved the informed-consent requirement.

No. 19-60053

*Hines* analyzed the Texas requirement based not on whether it regulated conduct or speech, but on whether it was a "state regulation of the practice of a profession." *Id.* at 201.

Prior to *NIFLA*, our court suggested that *Hines* adopted some form of the professional speech doctrine. *See Serafine v. Branaman*, 810 F.3d 354, 359 & n.3 (5th Cir. 2016). *NIFLA* has now rejected that doctrine, making *Hines'* reasoning unsound. Indeed, *Hines* relied in part on the Fourth Circuit's *Moore-King* decision, a professional speech case *NIFLA* rejected by name. *See Hines*, 783 F.3d at 202 (citing *Moore-King*, 708 F.3d at 569–70); *see also NIFLA*, 138 S. Ct. at 2371 (rejecting *Moore-King*). We therefore must recognize that, to the extent *Hines* relied on the professional speech doctrine, its reasoning has been abrogated by *NIFLA. Cf. Capital Associated Indus., Inc. v. Stein*, 922 F.3d 198, 207 (4th Cir. 2019) (acknowledging *NIFLA*'s abrogation of Fourth Circuit's professional speech doctrine).[9]

\* \* \*

While we hold the district court erred by categorically exempting occupational-licensing requirements from First Amendment scrutiny, we express no view on what level of scrutiny might be appropriate for applying Mississippi's licensing requirements to Vizaline's practice. We also need not decide to what degree Vizaline's practice constitutes speech or conduct. We merely reiterate *NIFLA*'s insistence on the conduct-speech analysis.

Similarly, we say nothing to suggest that Mississippi has no valid interests in regulating Vizaline's practice. Whatever its regulatory interests might turn out to be, though, Mississippi's surveyor requirements are not wholly exempt from First Amendment scrutiny simply because they are part

---

[9] We express no opinion on whether the Texas regulation at issue in *Hines* would have been upheld under the proper conduct-versus-speech analysis.

of an occupational-licensing regime.

We therefore REVERSE the district court's judgment dismissing Vizaline's First Amendment claims and REMAND for further proceedings consistent with this opinion.