

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00016-CV

_____

STONEWATER ROOFING, LTD. CO., APPELLANT

V.

TEXAS DEPARTMENT OF INSURANCE AND KENT SULLIVAN
IN HIS OFFICIAL CAPACITY AS COMMISSIONER
OF THE TEXAS DEPARTMENT OF INSURANCE, APPELLEES

On Appeal from the 201st District Court
Travis County, Texas
Trial Court No. D-1-GN-20-003172; Honorable Lora J. Livingston, Presiding

February 2, 2022

## OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Stonewater Roofing, Ltd. Co., appeals from the trial court's *Order Granting Motion to Dismiss,* entered pursuant to Rule 91a of the Texas Rules of Civil Procedure, in favor of Appellees, Texas Department of Insurance and Kent Sullivan, in his official capacity as Commissioner of the Texas Department of Insurance (hereinafter

collectively "TDI"). By two issues, Stonewater contends the trial court erred in granting TDI's motion to dismiss because its pleadings demonstrated an adequate basis in law and in fact, under the appropriate Rule 91a standard, to support its causes of action under the First and Fourteenth Amendments to the United States Constitution. *See* TEX. R. CIV. P. 91a.[1] (providing for the dismissal of any cause of action that does not have a "basis in law or fact"). Based on the facts of this case, we will reverse the order of the trial court and remand the matter for further proceedings not inconsistent with this ruling. TEX. R. APP. P. 43.2(d).[2]

**BACKGROUND**

In 2005, the Texas Legislature enacted provisions under the insurance code regulating "public insurance adjusting."[3] Public insurance adjusters are frequently hired by an insured to help resolve and settle insurance claims. The enacted provisions provide that a public insurance adjuster must be licensed in order to adjust insurance claims on an insured's behalf. TEX. INS. CODE ANN. § 4102.051 (West Supp. 2021).[4] Under these provisions, any person or entity defined as a contractor is prohibited from adjusting

---

[1] Rule 91a is analogous to Federal Rule of Civil Procedure 12(b)(6) and thus, case law interpreting Rule 12(b)(6) is helpful in our analysis herein.

[2] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[3] The Texas Legislature enacted chapter 4102 of the Texas Insurance Code effective September 1, 2005. *See* Act of May 24, 2005, 79th Leg., R.S., ch. 728, § 11.082(a), 2005 Tex. Gen. Laws 2259, 2259-72 (codified at TEX. INS. CODE ANN. §§ 4102.001-.208). Chapter 4102 is a comprehensive licensing statute regulating public insurance adjusters. *See* TEX. INS. CODE ANN. §§ 4102.001-.208 (West 2009 & Supp. 2021).

[4] This provision is simply a licensing requirement. The parties have little dispute regarding this provision.

insurance claims for properties at which the contractor is, or will be, providing contracting services. TEX. INS. CODE ANN. § 4102.163 (West 2009). Likewise, licensed public insurance adjusters are prohibited from providing any contracting services on property at which they are, or will be, providing public insurance adjusting services. In other words, acting as a public insurance adjuster and a contractor on the same claim is a statutorily defined conflict of interest. TEX. INS. CODE ANN. § 4102.158(a)(1) (West 2009).

Stonewater is a professional roofing company that repairs and replaces commercial and residential roofs in Texas. Stonewater is not licensed as a public insurance adjuster. However, Stonewater's website purportedly includes statements such as it is "highly experienced with the insurance claims process," that it has "done thousands of roof restorations due to insurance claims over the years," and it "understand[s] the supplement process required." Stonewater's website has also allegedly referenced the company as a "Trusted Roofing and Insurance Specialist" and "The Leader In Insurance Claim Approval," having "developed a system which helps our customers settle their insurance claims as quickly, painlessly and comprehensively as possible." Some of Stonewater's prior form agreements ostensibly contained language that "authorized" Stonewater "to negotiate on [the customer's] behalf with [the] insurance company and upon insurance approval to do the work specified." One of Stonewater's customers sued it, arguing these statements violated the prohibitions set forth in chapter 4102 of the Insurance Code.

In June 2020, Stonewater filed suit against TDI, challenging the prohibitions as impermissible regulations of commercial speech and alleging the provisions were

unconstitutionally vague.[5]  Stonewater requested a declaration that the prohibitions are invalid on their face and as applied under the First and Fourteenth Amendments to the United State Constitution and "corresponding provisions" of the Texas Constitution.  TDI filed a general denial on July 17, 2020, and a Rule 91a motion to dismiss on August 21, 2020.  TDI argued that Stonewater's constitutional challenges were subject to dismissal because they had no basis in law.  The trial court held a hearing on the motion and without explanation as to the basis for its ruling, granted TDI's motion to dismiss.

### STANDARD OF REVIEW

Rule 91a provides a procedure for dismissal of a case that has no basis in law or no basis in fact.  TEX. R. CIV. P. 91a.  A court of appeals reviews the merits of a Rule 91a motion "*de novo* because the availability of a remedy under the facts alleged is a question of law and the rule's factual plausibility standard is akin to a legal-sufficiency review." *Antolik v. Antolik*, No. 07-20-00281-CV, 2021 Tex. App. LEXIS 7272, at *6 (Tex. App.—Amarillo Aug. 31, 2021, no pet.) (mem. op.) (citing *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016)).

"A cause of action has no basis in law if the allegations, taken as true, together with reasonable inferences drawn from them, do not entitle the claimant to the relief sought."  *Antolik*, 2021 Tex. App. LEXIS 7272, at *6-7 (citation omitted).  Except as required by 91a.7 (award of costs and attorney fees), the court "may not consider

---

[5] We note that Stonewater properly filed notice with the attorney general's office that it was challenging the statute as unconstitutional.  TEX. GOV'T CODE ANN. § 402.010 (requiring party to notify attorney general when raising constitutional challenge to statute); TEX. CONST. art. V, § 32 (permitting legislature to require court to provide notice to attorney general of constitutional challenge).

evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action . . . ." *Id.* (citing TEX. R. CIV. P. 91a.6).

Furthermore, the trial court construes the pleadings liberally in favor of the plaintiff, looks to the plaintiff's intent, and accepts the plaintiff's factual allegations as true, and, if necessary, draws reasonable inferences from the factual allegations to determine if the cause of action has a basis in both law and fact. *Antolik*, 2021 Tex. App. LEXIS 7272, at *7 (citing *In re Farmers Tex. Cty. Mut. Ins. Co.*, 604 S.W.3d 421, 425-26 (Tex. App.—San Antonio 2019, orig. proceeding)). Dismissal of a cause of action under Rule 91a is a harsh remedy with fee-shifting consequences; thus, an appellate court strictly construes the rule's requirements. *Antolik*, 2021 Tex. App. LEXIS 7272, at *7 (citing *Bedford Internet Office Space, LLC v. Tex. Ins. Grp., Inc.*, 537 S.W.3d 717, 720-21 (Tex. App.—Fort Worth 2017, pet. dism'd)).

The trial court may not consider evidence in ruling on the dismissal motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by the Texas Rules of Civil Procedure. *Antolik*, 2021 Tex. App. LEXIS 7272, at *7-8 (citing TEX. R. CIV. P. 91a.6.5; *AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality*, 543 S.W.3d 703, 706 (Tex. 2018); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 880 (Tex. 2018); *Sanchez*, 494 S.W.3d at 724). In deciding whether the trial court properly granted a motion to dismiss under Rule 91a, a reviewing court applies the fair-notice pleading standard in determining whether the allegations in the petition were sufficient to allege a cause of action. *Antolik*, 2021 Tex. App. LEXIS 7272, at *8 (citing *Thomas v. 462 Thomas Family Props., LP*, 559 S.W.3d 634, 639-40 (Tex. App.—Dallas 2018, pet. denied)). Under that standard, a court considers whether the opposing

5

party "can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Antolik*, 2021 Tex. App. LEXIS 7272, at *8 (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). In other words, the fair-notice standard measures whether the pleading has provided the opposing party sufficient information to enable that party to prepare a defense or a response. *Antolik*, 2021 Tex. App. LEXIS 7272, at *8 (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224-25 (Tex. 2017) (citing *Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013); *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)).

### ISSUES

Through two issues, Stonewater contends it sufficiently pleaded both a factual and a legal basis for its claim under the First and Fourteenth Amendments, for which TDI failed to identify any clear bar. Accordingly, it argues, the trial court's judgment of dismissal must be reversed.

### ISSUE ONE—FIRST AMENDMENT CLAIM

Via its first issue, Stonewater argues the trial court erred as a matter of law in granting TDI's motion to dismiss its First Amendment claim. Stonewater argues its claim survives a Rule 91a motion to dismiss because the prohibitions in question restrict a broad range of commercial speech and facially regulate that speech on the basis of both its content and its speaker. As such, Stonewater contends the statutory prohibitions violate the First Amendment on its face. Stonewater further claims the statutory provisions amount to a content-based restraint of free speech, are presumptively unconstitutional, and fail to pass a strict scrutiny review. Alternatively, Stonewater asserts that the statutory

6

provisions in question amount to an improper regulation of commercial speech and that they also fail intermediate scrutiny. TDI argues the trial court properly dismissed Stonewater's First Amendment challenge to the prohibitions because the statutes do not trigger First Amendment scrutiny at all. As support for its argument, TDI contends the "First Amendment only applies to governmental regulations of speech, and the Public Adjusting Prohibitions do not regulate speech but instead regulate unprotected professional conduct." TDI asserts the prohibitions do not require anything specific to be said, printed, or disseminated and do not prohibit general discussions of topics that are legal. As such, TDI contends, the provisions do not target speech as speech. Rather, the provisions regulate professional conduct by prohibiting the unlicensed practice of public insurance adjusting and prohibiting contractors from adjusting claims for certain properties. For the reasons stated hereinbelow, we disagree with TDI's position and agree with Stonewater's position.

The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. CONST. amend I. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). If a law simply prohibits non-expressive conduct rather than speech, the First Amendment is inapplicable, and the inquiry proceeds no further. *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 931 (5th Cir. 2020). (citation omitted). Thus, we must first determine whether the prohibitions at issue here (1) regulate only speech, (2) restrict speech only incidentally to their regulation of non-expressive professional conduct, or (3) regulate only non-expressive conduct. *Id.* (citation omitted). The United States Supreme Court spoke to these issues as it applied to occupational licensing regulations in *Nat'l Inst. of Family*

7

*& Life Advocates v. Becerra*, 2018 U.S. LEXIS 4025, 138 S. Ct. 2361, 201 L. Ed. 2d 835 (2018). There, the Court explained that "[s]peech is not unprotected merely because it is uttered by 'professionals.'" *Id.* at 2371-72. A professional speech exception to the right of free speech, it warned, would "give the States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Id.* at 2375. Such power would give the States a powerful tool to impose "invidious discrimination of disfavored subjects." *Id.* (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423-424, n.19, 113 S. Ct. 1505, 123 L. Ed. 2d 99 (1993)). Accordingly, the Court applied "the traditional conduct-versus-speech dichotomy" used in other cases.[6]

Under the First Amendment, a government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed*, 576 U.S. at 163 (citing *Police Dep't of Chicago v. Mosley*, 408 U. S. 92, 95, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972)). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (citing *R.A.V. v. St. Paul*, 505 U. S. 377, 395, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U. S. 105, 115, 118, 112 S. Ct. 501, 116 L. Ed. 2d 476 (1991)).

Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *Reed*, 576 U.S. at 163 (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 263-565, 131 S. Ct. 2653,

---

[6] TDI notes that it is not arguing that the "professional speech" doctrine applies here, as Stonewater contends. TDI acknowledges that doctrine "is dead." Rather, TDI's argument is "squarely within the confines of the conduct-versus-speech dichotomy."

2663-64, 180 L. Ed. 2d 544, 555-56 (2011); *Carey v. Brown*, 447 U. S. 455, 462, 100 S. Ct. 2286, 65 L. Ed. 2d 263 (1980); *Mosley*, 408 U.S. at 95). This "commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163 (citing *Sorrell*, 564 U.S. at 564). Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, while others are more subtle, defining regulated speech by its function or purpose. Both are "distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Reed*, 576 U.S. at 164.

We must address TDI's argument that this case involves conduct, not speech. It contends the challenged statutes regulate professional conduct because the provisions do not prohibit Stonewater from engaging in communications related to insurance but rather simply prohibit Stonewater from receiving compensation for acting on behalf of an insured party and adjusting claims without a public insurance adjuster license. Accordingly, it asserts, the protections of the First Amendment are inapplicable and an intermediate rational basis scrutiny should apply because the provisions are rationally related to a legitimate government purpose, i.e., regulating the practice of insurance adjusting.

Section 4102.163(a) provides: "A contractor may not act as a public adjuster or advertise to adjust claims for any property for which the contractor is providing or may provide contracting services, regardless of whether the contractor: (1) holds a [public insurance adjuster] license under this chapter; or (2) is authorized to act on behalf of the insured under a power of attorney or other agreement." TEX. INS. CODE ANN. §

9

4102.163(a). While, in this instance, TDI maintains the statute speaks only to conduct, we find any conduct under the statute consists of communicating.[7] TDI points to nothing that a public insurance adjuster does that is simply conduct. The business of public insurance adjusting necessarily and inextricably involves speech. *See, e.g., Holder v. Humanitarian Law Project*, 561 U.S. 1, 28, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010). *See also Bartnicki v. Vopper*, 532 U.S. 514, 527, 121 S. Ct. 1753, 149 L. Ed. 2d 787 (2001) (If "the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct."). Courts have long held that dissemination of information is speech within the First Amendment. *Sorrell*, 564 U.S. at 570. Here, Stonewater's statements and discussions consisted of communicating and of gathering and disseminating information. Accordingly, this case involves speech, not conduct.

We must turn then to a determination of whether the speech in question is content-based. Under chapter 4102, the permissibility of a contractor's communications is dependent on whether the contractor communicates with the function or purpose of "negotiating for or effecting the settlement of a claim" or "advertis[ing]" or "solicit[ing]" the ability to do so. However, chapter 4102 does not prohibit the contractor from making other types of statements on behalf of the insured such as estimating the amount of damage to a customer's home or the appropriate replacement cost. As such, it is necessary to examine the content of a given statement to determine whether it is prohibited under chapter 4102. Stonewater argues that because the prohibitions do "not simply have an effect on speech, but [are] directed at certain content and aimed at

---

[7] The same assertion is made in the *Amici Curiae* brief.

particular speakers," they cannot satisfy strict scrutiny. *See Barr v. Am. Ass'n of Political Consultants*, 2020 U.S. LEXIS 3544, 140 S. Ct. 2335, 2342, 207 L. Ed. 2d 784 (2020). *See also Nat'l Inst. of Family & Life Advocates*, 138 S. Ct. at 2365-66. TDI concedes through its arguments that the prohibitions "do not prohibit general discussions of topics that are legal" and thus, appears to acknowledge that the legality of Stonewater's statements is dependent on the topics discussed.

The situation before us is similar to that at issue in *Sorrell*, 564 U.S. at 563. There, the statute prohibited pharmaceutical companies from selling, disclosing, or using prescriber-identifying information for marketing but not for other purposes such as "educational communications." *Id.* at 563-64. The court found that on its face, the statute enacted content-and-speaker-based restrictions and thus, the statute was subject to heightened scrutiny. *Id.* at 565. The court further found that the law did "not simply have an effect on speech, but is directed at certain content and is aimed at particular speakers." *Id.* at 567. Likewise, we find the prohibitions here are both content-based, as the prohibition is dependent on the content of the communications, and speaker-based, because it is aimed specifically at roofing contractors, the speakers. Thus, the provisions are subject to strict scrutiny under the First Amendment. As such, the State would be required to present evidence to show that the prohibited communication had a direct causal relationship to the State's compelling interest. Accordingly, we find Stonewater sufficiently pleaded a legal and factual basis for its First Amendment claim such that the trial court erred in granting TDI's Rule 91a motion to dismiss.

Moreover, we agree with Stonewater that even if these prohibitions restrict speech only incidentally in the regulation of non-expressive professional conduct, the less

stringent standard under the First Amendment applies. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980) (seminal case finding that the First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation; sets forth a four-part analysis applying an intermediate level of scrutiny). As such, outright dismissal of Stonewater's claim would still be improper under this standard of review. *See McLemore v. Gumucio*, No. 3:19-CV-00530, 2020 U.S. Dist. LEXIS 228082, at *48, 57 (M.D. Tenn. Dec. 4, 2020) (finding that advertising as and representing to be an auctioneer implicates speech, even if the regulation of speech is only incidental to a regulation of conduct (i.e., a sales transaction) and stating "even a neutral regulation unrelated to the content of expression that incidentally burdens speech is still subject to an intermediate form of scrutiny" and "intermediate scrutiny (like strict scrutiny) would require the court to make factual findings based on evidence, which cannot be done at the motion to dismiss stage"). *See also Am. Med. Ass'n v. Stenehjem*, 412 F. Supp. 3d 1134, 1149 (D.N.D. 2019); *Capital Associated Indus. v. Stein*, 922 F.3d 198, 209 (4th Cir. 2019) (both applying intermediate scrutiny).

Accordingly, we find Stonewater's pleadings include factual allegations that satisfy the requisites of bringing a First Amendment claim. It is not for us to determine whether such allegations will ultimately be meritorious as our only inquiry here is whether Stonewater has sufficiently pleaded its claim to survive a Rule 91a motion to dismiss. We find it has and sustain Stonewater's first issue.[8]

---

[8] Stonewater also argues TDI failed to address its as-applied challenge. Given our disposition herein, we find it unnecessary to address that complaint.

12

**ISSUE TWO—FOURTEENTH AMENDMENT CLAIM**

By its second issue, Stonewater argues the trial court erred as a matter of law in granting TDI's motion to dismiss the Fourteenth Amendment claim because it failed to assert an argument that supported a dismissal of the claim. First, Stonewater argues, the prohibitions do not clearly proscribe Stonewater's speech. Further, TDI argued only that Stonewater could not sustain a vagueness challenge as applied to Stonewater if the prohibitions clearly proscribed Stonewater's alleged speech. However, that argument, Stonewater asserts, has no bearing on whether it can maintain its facial vagueness challenge because facial attacks are not dependent on the facts surrounding any particular decision.[9]

TDI responds that the trial court properly dismissed Stonewater's Fourteenth Amendment claim because Stonewater's conduct was clearly proscribed, foreclosing a vagueness challenge. TDI argues that Stonewater failed to acknowledge that a void-for-vagueness challenge fails if the complainant's own conduct is clearly proscribed by the law.

The Fourteenth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The "[v]agueness doctrine is an outgrowth of the Due Process Clause." *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). Due process

---

[9] An as-applied challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct. *Columbus v. Meyer*, 786 N.E.2d 521, 526 (10th Dist. Ohio 2003). In contrast, a facial-vagueness challenge asserts the statute is vague in all of its applications. *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-495, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). A facial-vagueness challenge asserts that a law is unconstitutional as applied to the hypothetical conduct of a third party and without regard to the challenger's specific conduct. *Forsyth County, Georgia v. The Nationalist Movement*, 505 U.S. 123, 129, 112 S. Ct. 2395, 120 L. Ed. 2d 101 (1992).

13

requires that statutes providing for criminal prosecution be drafted "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *See Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). *See also Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551, 2557-58, 192 L. Ed. 2d 569 (2015); *Munn v. City of Ocean Springs, Miss.*, 763 F.3d 437, 439 (5th Cir. 2014) ("The Due Process Clause requires that a law provide sufficient guidance such that a man of ordinary intelligence would understand what conduct is being prohibited."). Violation of the prohibitions here subject the violator to civil and criminal penalties.

Where a law infringes on fundamental rights, particularly First Amendment rights, courts permit standalone facial vagueness challenges. *Sibley v. Watches*, 501 F. Supp. 3d 210, 226-27 (W.D.N.Y. 2020) (citations omitted). To prevail on a facial vagueness challenge of a law that implicates fundamental rights, the challenger must show that the law "reaches a substantial amount of constitutionally protected conduct." *Id.* (citations omitted). In other words, the law will not be facially invalidated unless its chilling effect on constitutionally protected conduct is "both real and substantial." *Id.* (quoting *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 60, 96 S. Ct. 2440, 49 L. Ed. 2d 310 (1976)). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) (quoting *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000)). "Thus, all vagueness challenges—whether facial or as-applied—require [courts] to answer two

14

separate questions: whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement." *Sibley*, 501 F. Supp.3d at 227.

Stonewater argued that the prohibitions are void for vagueness because the provisions do not provide fair notice of the conduct that might be punished. Consequently, it and other similarly situated roofing companies cannot definitively know what statements might trigger a violation because the language of the statute is sufficiently broad to encompass any of the routine statements made by such companies to insureds. Stonewater argues TDI totally failed to challenge this claim and thus, the trial court erred in dismissing the claim under Rule 91a. TDI disagrees, arguing it did challenge the facial vagueness claim and that the trial court dismissed it as part of its consideration of Stonewater's as-applied challenge. The pleadings show TDI acknowledged Stonewater's facial vagueness claim in its Rule 91a motion to dismiss. However, it said only that "Stonewater fails to show at the outset that the statute is vague as applied to its own actions, thereby eliminating any need for this court to ponder any hypothetical applications as to other conceivable parties." Because TDI failed to fully develop its argument on this point and because we cannot say the trial court necessarily considered Stonewater's facial vagueness claim as part of the as-applied claim, we find Stonewater has sufficiently pleaded the claim so as to survive the Rule 91a motion to dismiss.

Speech is not clearly proscribed if the plaintiff "had reason to suppose that his particular statements . . . would not violate the challenged law." *Holder*, 561 U.S. at 23. TDI argues the prohibitions clearly proscribe these statements by Stonewater:

(1) Stonewater's website stating that the company consists of "Trusted Roofing and Insurance Specialists" and is the [sic] "The Leader in

Insurance Claim Approval" that "developed a system which helps our customers settle their insurance claims as quickly, painlessly and comprehensively as possible[,]" and (2) Stonewater's use of a form agreement that "authorized Stonewater to negotiate on the customer's behalf with the insurance company and upon insurance approval to do the work specified."

The provisions prohibit advertising or soliciting oneself as an adjuster of claims and acts on behalf of an insured in negotiating for or effecting the settlement of a claim. The statements made by Stonewater set forth above do none of those things. In none of the statements does Stonewater ever say it is a public insurance adjuster or that it is acting as "an adjuster of claims" as barred by section 4102.001(3)(B) of the Insurance Code and, accordingly, Stonewater had no reason to believe that any of the statements it made violated that provision. This is particularly true in the context in which its customers hired both Stonewater and a separate public insurance adjuster. Under those circumstances, Stonewater certainly had no reason to believe any of the statements it made violated the prohibitions. A customer would have no reason to hire a public insurance adjuster separate and apart from Stonewater if it was acting as a public insurance adjuster. Accordingly, Stonewater's statements were not clearly proscribed, and it has sufficiently pleaded its claims under the Fourteenth Amendment sufficient to survive TDI's Rule 91a motion to dismiss. We sustain Stonewater's second issue.

CONCLUSION

Having sustained each of Stonewater's appellate issues, we reverse the order of the trial court and remand the matter for further proceedings.


Patrick A. Pirtle
Justice

16