358 So.2d 387 (1978)
BELLEFONTE INSURANCE COMPANY
v.
James R. GRIFFIN.
No. 50075.
Supreme Court of Mississippi.
April 26, 1978.
Rehearing Denied May 24, 1978.
*388 Levingston, Jacks, Levingston & Land, Alfred A. Levingston, Cleveland, for appellant.
Jacobs, Griffith & Povall, Charles C. Jacobs, Jr., Benjamin E. Griffith, Cleveland, for appellee.
*389 Before PATTERSON, BROOM and BOWLING, JJ.
PATTERSON, Chief Justice, for the Court.
This is an automobile insurance case in which the insurer, Bellefonte Insurance Company appeals from a judgment of the Circuit Court of the Second Judicial District of Bolivar County in favor of James R. Griffin, the insured.
Griffin purchased a used Peterbilt truck, financing $12,712.50 of the purchase price with International Harvester Credit Corporation (hereinafter IHCC) and insuring it with Bellefonte Insurance Company (hereinafter Bellefonte) against collision, which included vandalism. The truck was leased to Eagle Motor Lines (hereinafter Eagle) with the agreement that Griffin receive 65% of the gross revenue collected from its operation less the cost of the operating the vehicle. Eagle sent Griffin weekly checks of his share after deducting expenses.
On May 14, 1975, while under lease to Eagle, the truck was vandalized. Cummins Mid-South, Inc., in Memphis, Tennessee, ascertained that sand or sugar had been inserted into the fuel tank. Bellefonte was notified and an adjuster met Griffin at Cummins the following day when both requested Cummins to repair it. By May 29, 1975, the truck was ready, but, as Griffin had refused Bellefonte's offer of $2,431.95 on the $4,796.74 repair bill, it had not been paid and Cummins retained possession of the truck.
Bates Macgowan, a representative of Bellefonte, explained the company's position in a letter dated June 24, 1975, to Griffin's attorney. Bellefonte claimed depreciation on the repairs under its policy asserting that the average expectancy between overhauls of a large diesel truck was 300,000 miles and that Griffin's vehicle had traveled approximately 147,862 miles since the last major overhaul. The first offer had been computed at 49.3% depreciation and the second offer for $2,878.05 which he tendered was computed at 40% depreciation.
Griffin maintained that the truck had received its latest overhaul by Ryder Truck Rental, Inc., the former owner, at approximately 36,248 miles previous to the vandalism. Ryder's maintenance record on the vehicle substantiated this claim. However, Macgowan's letter indicated that Griffin had prompted an employee of International Harvester to inform Macgowan that major service had been performed as Griffin maintained, but this individual when contacted would not verify the service. To Griffin's knowledge Bellefonte never investigated this last overhaul.
The pertinent policy provision under which Bellefonte claimed depreciation stated the following:
3. Limit of Liability; Settlement Options; No Abandonment: The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declarations. (Emphasis ours.)
Bellefonte's last offer of approximately $3,800 was refused. Eventually, IHCC foreclosed on Griffin's loan, paying the repair bill and selling the truck.
Griffin sued Bellefonte in the Circuit Court of the Second Judicial District of Bolivar County, demanding remuneration for lost profits, loss of the truck, punitive damages, and attorney's fees. IHCC was joined as a necessary party and counter-claimed against Griffin for the deficiency after the sale including the sales commission and for reasonable attorney's fees.
At a pretrial conference, the lower court determined that Bellefonte was not entitled to deduct depreciation, that no evidence in that regard would be permitted, and that plaintiff was not entitled to punitive damages or attorney's fees. The cause went to trial and at its conclusion the lower court granted peremptory instructions for Griffin *390 in the amount of the repair bill less the $50 deductible and for IHCC for its claim including reasonable attorney's fees. The question of Griffin's actual damages, excluding the sales commission and attorney's fees, was presented to the jury which awarded $13,846.74. The lower court directed that the amount of repairs plus interest should be applied to IHCC against Griffin and later sustained a motion of Bellefonte for a new trial or in lieu thereof a remittitur which plaintiff accepted, leaving a judgment of $11,357.84.
Bellefonte appeals, assigning as error that the judgment was contrary to the law and overwhelming weight of the evidence in that the lower court erred in the following:
1. Failing to allow appellant to offer proof of depreciation in that the appellant was entitled to deduct depreciation from repairs,
2. Allowing damages to the appellee, and
3. Granting and denying certain jury instructions.
Griffin cross appeals that the lower court erred in not allowing him punitive damages and attorney's fees against Bellefonte.
The appellant first contends that the lower court erred in failing to admit proof of depreciation on the repairs. It is well established that ambiguity and doubt in an insurance policy must be resolved in favor of the insured. McLaurin v. Old Southern Life Ins. Co., 334 So.2d 361 (Miss. 1976); State Farm Mutual Auto. Ins. Co. v. Taylor, 233 So.2d 805 (Miss. 1970); Home Owners Ins. Co. v. Keith's Breeder Farms, Inc., 227 So.2d 293 (Miss. 1969). This is so in order that the purpose of the policy will not be defeated. Aetna Life Ins. Co. v. Evins, 199 So.2d 238 (Miss. 1967); American Hardware Mutual Ins. Co. v. Union Gas Co., 238 Miss. 289, 118 So.2d 334 (1960).
The policy provision under examination admits to interpretation contrary to what we think is the purpose of the policy. The particular phrase under scrutiny reads as follows:
... what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation ...
This language seemingly allows the insurer to repair or replace an automobile or its damaged parts with an automobile or parts of equal value, which would entail consideration as to use and age and then to allow, additionally, deduction for depreciation. This would be a double deduction in favor of the insurer. Such construction would allow an insurer, for example, to replace an automobile with another of the same year, model and approximate condition and mileage and then claim depreciation. When an automobile is replaced with another of like kind and quality, then the replacement is already depreciated to the extent of the original vehicle. We think this language of the policy indeed admits to an unjust construction.
If we assume for the moment that the language is unambiguous, we are cited to no authority nor can we find any where the amount of depreciation has been calculated upon the mileage between overhauls.
Further, the record discloses that Bellefonte's original offer was based on depreciation not only of parts but also of labor. In its pleadings to the lower court appellant submitted that its last offer was based only on depreciation of parts and not of labor. Again, the language in the policy is ambiguous and does not specifically prohibit or allow depreciation on the cost of labor.
We think the language is not "so plain and unambiguous as to leave no room for construction" so as to make the rule of strict construction applicable. Gotcher Engineering and Mfg. Co. v. U.S. Fidelity & Guaranty Co., 193 So.2d 115 (Miss. 1966). Rather, we have a situation where the intent of the policy by its very language is uncertain. We are of the opinion that its purpose was to provide the insured with an equivalent, in money, a vehicle, or parts.
The Mississippi cases cited by Griffin are distinguishable as they never considered an *391 appreciable increase in market value after repairs under policies allowing deductions for depreciation but were concerned with occurrences where the vehicle after repairs most probably was worth less than before damages. See Motors Ins. Corp. v. Smith, 218 Miss. 268, 67 So.2d 294 (1953); Potomac Ins. Co. v. Wilkinson, 213 Miss. 520, 57 So.2d 158 (1952); and Boston Ins. Co. v. Wade, 203 Miss. 469, 35 So.2d 523 (1948).
Accordingly, we are of the opinion that the trial court was correct in disallowing proof of depreciation on repairs as the policy provision was ambiguous and must therefore be construed in favor of the insured.
The second assignment of error is that the trial court erred in allowing damages to appellee. Appellee brought suit upon a tort theory in that Bellefonte failed to investigate the alleged overhaul by Ryder and refused to pay the entire repair bill. We believe that Bellefonte was negligent in failing to investigate appellee's claim of a more recent overhaul as the maintenance record introduced at trial clearly indicated that an overhaul had been recorded as being performed on September 6, 1974, by Ryder. Bellefonte offered no proof to rebut this claim of negligence although it used mileage since repair as the basis for its depreciation of repair costs. The record discloses that Griffin brought this to Mr. Macgowan's attention but to no avail.
We are of the opinion that although the appellee is entitled to actual damages, the evidence does not support the amount of the jury verdict or the judgment after remittitur. It is doubtful that all of the expenses, though largely uncontradicted, were considered in determining the amount of monthly profits, if any, of Griffin. Further, damages were apparently allowed to December 18, 1975, whereas the declaration demanded compensation for losses to November 3, 1975, when the sale was consummated. The evidence, largely the statements of Eagle, simply does not support the award of actual damages.
Appellant's final contention is that certain jury instructions were erroneously granted and others denied. After due consideration, we think the trial court did not err in determining the propriety of these instructions and therefore conclude this contention is without merit.
Lastly, Griffin cross appeals, contending that punitive damages and attorney's fees were appropriate remedies. It is settled that punitive damages are recoverable only where the breach is attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort. Standard Life Ins. Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1977); Lincoln Nat'l. Life Ins. Co. v. Crews, 341 So.2d 1321 (Miss. 1977); Progressive Casualty Ins. Co. v. Keys, 317 So.2d 396 (Miss. 1975). We are of the opinion the negligence of Bellefonte in failing to investigative thoroughly Griffin's claim of a more recent overhaul of the truck and in claiming depreciation were not such acts as to warrant punitive damages. This was particularly so as the situation was ongoing with offers of adjustment being made and complicated by Griffin's frequent changes of attorneys which certainly were not inducements to speedy settlement. Moreover, Bellefonte's argument that the repairs would have the effect of appreciating the truck's value rather than depreciating it was reasonable and surely not illogical.
As to attorney's fees, the rule in the absence of statute is that they are not recoverable unless the facts are of such gross or willful wrong as to justify the infliction of punitive damages. Cooper v. U.S. Fidelity & Guaranty Co., 186 Miss. 116, 188 So. 6 (1939); Yazoo & M.V.R. Co. v. Consumers' Ice & Power Co., 109 Miss. 43, 67 So. 657 (1915). As there is no applicable statute and because we are of the opinion the trial court did not err in denying punitive damages, it follows that an award of attorney's fees would not have been proper.
Therefore, we affirm the lower court in part and reverse and remand only as to damages.
*392 AFFIRMED IN PART, REVERSED IN PART AND REMANDED AS TO DAMAGES.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.