REVISED AUGUST 31, 2012

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2012

No. 11-10798

Lyle W. Cayce
Clerk

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,

Plaintiff - Appellant

v.

AMERICAN EUROCOPTER CORPORATION; EUROCOPTER S A S,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, SMITH, and CLEMENT, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiff-Appellant National Union Fire Insurance Co. brought this suit against Defendant-Appellee American Eurocopter Corp. ("AEC"), seeking contribution to National Union's settlement of claims arising from the crash of a helicopter operated by National Union's insured. National Union initially brought the case in Hawaii, where the helicopter crashed. The District of Hawaii found that it had no personal jurisdiction over AEC and transferred venue to the Northern District of Texas. The Texas district court ruled that Texas law applies to National Union's claims and rendered summary dismissal

because Texas law bars contribution claims arising from out-of-court settlements.

On appeal, National Union challenges the Texas district court's choice-of-law ruling and the Hawaii district court's refusal to allow jurisdictional discovery regarding AEC's Hawaii contacts before transferring the case. Because we lack jurisdiction to hear appeals of the Hawaii district court's orders, and we agree with the Texas district court's choice-of-law ruling, we AFFIRM.

## I. BACKGROUND

National Union's insured, Heli-USA, is a Nevada-based entity that provides aerial sight-seeing tours in Nevada, Arizona, and Hawaii. On March 8, 2007, one of Heli-USA's helicopters crashed in Hawaii. The U.S. Department of Transportation concluded that mechanical failure and faulty maintenance caused the crash. The N3604S was designed and manufactured in France by AEC's parent company, Defendant-Appellee Eurocopter S.A.S. AEC is incorporated in Delaware and based in Grand Prairie, Texas. AEC supplies spare parts and technical advice to entities that own, operate, or maintain Eurocopter helicopters throughout the United States. AEC receives the parts from Eurocopter, which manufactures them in France. Eurocopter also authors the bulletins through which AEC supplies technical advice to helicopter operators.

Eurocopter sold the helicopter in 1976 to a predecessor in interest of AEC, which then sold it to a buyer in the United States. At the time of the crash, the helicopter was owned by Jan Leasing, LLC, a Las Vegas-based firm that leased it to Heli-USA. Heli-USA operated and maintained the helicopter in Hawaii. Since 1998, AEC has supplied Heli-USA with spare parts and technical advice for several Eurocopter helicopters. AEC has no permanent staff in Hawaii, but performing its contracts with Heli-USA and other Eurocopter operators there requires AEC to send a representative to visit regularly. AEC supplied parts and technical information to Heli-USA under their "Operators Parts Purchase Agreement" ("Parts Agreement"), which includes a Texas choice-of-law provision.

The crash killed or injured all aboard. National Union settled with the injured passengers and the descendants of the passengers who were killed. National Union secured releases of liability against Heli-USA, and the releases also covered AEC and Eurocopter, though they were not parties to the settlement. National Union is a Pennsylvania corporation. The settling passengers were citizens of California, New York, and Arkansas.

National Union sued AEC in Hawaii state court, seeking contribution to the cost of the settlement. AEC removed the case to federal court and moved to dismiss for lack of personal jurisdiction. The Hawaii district court found that it lacked personal jurisdiction, denied National Union's request for additional discovery, and transferred the action to the Northern District of Texas, where National Union added Eurocopter as a defendant. National Union contends that AEC and Eurocopter were negligent in designing and manufacturing the helicopter and its replacement parts, and that they failed to warn Heli-USA of the technical issue that caused the crash.

On motion by AEC and Eurocopter, the district court ruled that Texas law applies to the suit and rendered summary dismissal because Texas law does not allow an entity that has settled claims out of court to seek contribution from other entities that were potentially liable as joint tortfeasors. Beech Aircraft Corp. v. Jinkins.[1] National Union timely appealed.

## II. DISCUSSION

### A. The Transfer

National Union contends that "the Hawaii district court erred in denying National Union's motion for continuance to conduct jurisdictional discovery and transferring the case to Texas based upon its conclusion that it lacked personal jurisdiction over AEC . . . ." We lack jurisdiction to hear appeals challenging

---

[1] 739 S.W.2d 19, 21-22 (Tex. 1987).

venue transfer orders issued by district courts in other circuits. See 28 U.S.C. § 1294 (defining a federal appellate court's jurisdiction as encompassing "appeals . . . [f]rom a district court of the United States to the court of appeals for the circuit embracing the district").[2] We recognize that the Hawaii court's conclusion that it lacked personal jurisdiction over AEC affected the course of the suit after it was transferred. The Texas district court would have applied Hawaii, rather than Texas, choice-of-law rules if the transfer had been based on convenience, rather than the lack of personal jurisdiction.[3] However, National Union did not ask the Texas court to apply Hawaii choice-of-law rules to its claims.[4]

B. Choice of Law

National Union contends that the Texas district court erred in holding that Texas rather than Hawaii law should apply to its claims. A district court's choice-of-law determination is a legal conclusion, reviewed de novo. Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n.[5] In the posture of a summary judgment ruling, facts genuinely in dispute are considered in the light most favorable to the non-movant. See Chaney v. Dreyfus Serv. Corp.[6] In

---

[2] See also 15 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3855 (3rd ed. 2010) ("[I]f the transfer was made from a district court in one circuit to a district court in another, the court of appeals in the latter circuit cannot directly review the action of the first district court in ordering the transfer.").

[3] The choice-of-law rules of the transferee state apply if a diversity suit was transferred from a district court that had no personal jurisdiction over the defendant or where venue was otherwise improper. Ellis v. Great Sw. Corp., 646 F.2d 1099, 1110-11 (5th Cir. 1981). When the transfer is instead made for the convenience of the parties, the transferee court applies the choice-of-law rules that would have applied in the transferor court had the case remained there. See Tel-Phonic Servs., Inc. v. TBS Int'l., Inc., 975 F.2d 1134, 1141 (5th Cir. 1992).

[4] Cf. 15 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3855 (3rd ed. 2010) ("The question [of the merits of an inter-circuit transfer] may be preserved by making a motion in the transferee court to transfer the case back to the original forum.")

[5] 624 F.3d 185, 190 (5th Cir. 2010).

[6] 595 F.3d 219, 229 (5th Cir. 2010).

diversity cases, federal courts apply the choice-of-law rules of the forum state, Klaxon Co. v. Stentor Elec. Mfg. Co.,[7] which in this case is Texas.

In deciding choice-of-law issues, Texas courts generally follow the Restatement (Second) of Conflict of Law's "most significant relationship" test, which entails considering the contacts listed in Restatement § 145 in light of the factors set forth in Restatement § 6. See Torrington Co. v. Stutzman;[8] see also RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 173 (2010).

The first § 145 contact is the place where the injury occurred. RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 145(2)(a). In this case, that is Hawaii, where the helicopter crashed. The second contact is the place where the conduct causing the injury occurred. Id. at § 145(2)(b). The helicopter was operated and maintained in Hawaii, using parts and technical bulletins that were made in France and passed through AEC's facilities in Texas. National Union alleges that the accident is attributable either to defects in Eurocopter's parts or its technical bulletins, or to the AEC representative's failure to warn Heli-USA about the technical issue that caused the crash during his trips to Hawaii. However, if AEC failed to warn Heli-USA, its omission could have occurred in Texas just as well as in Hawaii. Also, while AEC sometimes sent technical bulletins directly to Heli-USA personnel in Hawaii, the usual practice was for AEC staff in Texas to send the bulletins to recipients at Heli-USA's Nevada offices. On AEC and Eurocopter's version of the facts, the helicopter received faulty maintenance because Heli-USA's Nevada personnel failed to forward an AEC technical bulletin to the Hawaii maintenance staff. The conduct causing the injury thus disclose contacts with Hawaii, Texas, Nevada, and France.

---

[7] 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941).

[8] 46 S.W.3d 829, 848 (Tex. 2000).

The third § 145 contact is the domicil, residence, nationality, place of incorporation, and place of business of the parties. RESTATEMENT (SECOND) CONFLICT OF LAWS, § 145(2)(c). In most cases, "the importance of these contacts depends largely upon the extent to which they are grouped with other contacts." See id. at § 145 cmt. e. In this case, the jurisdictions where the parties do business disclose significant contacts with France, Texas, and Nevada, as well as Hawaii, where an AEC representative regularly consulted with Heli-USA. There are less important contacts with Pennsylvania, where National Union is based, and Delaware, where AEC is incorporated.

The fourth contact is the place where the parties' relationship is centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 145(2)(d). National Union emphasizes the regular meetings in Hawaii between Heli-USA and an AEC representative. However, the Parts Agreement's choice-of-law clause points to Texas. The clause's wording is not so broad as to require of its own force that Texas law apply to National Union's claims, but it does reflect a decision on AEC and Heli-USA's part to center their relationship in Texas for choice-of-law purposes.

We turn to the factors in § 6 of the Restatement. The factors significant here are the relevant policies of the forum, the policies of other states and their relative interests in the determination of the particular issue, and the protection of justified expectations. RESTATEMENT (SECOND) CONFLICT OF LAWS, § 6. These factors favor applying Texas law. The Jinkins rule reflects Texas's public policy against "permit[ting] a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed." Int'l Proteins Corp. v. Ralson-Purina Co.[9] We are skeptical that Texas courts would reach choice-of-law decisions that would frustrate that policy to the detriment of a Texas

_____

[9] 744 S.W.2d 932, 934 (Tex. 1988).

defendant, unless other considerations overwhelmingly favored a different forum. Hawaii's policy interests are attenuated because the settling crash victims have been compensated at the expense of a non-Hawaii entity. See W.R. Grace & Co. v. Cont'l Cas. Co.[10] As for the parties' expectations, we note that nothing prevented National Union from apprising itself of the provisions of the Parts Agreement and the differing treatment of contribution claims under Hawaii and Texas law before deciding to settle the passengers' claims out of court. We agree with the district court that the factors and contacts of § 6 and § 145 of the Restatement favor applying Texas law to National Union's claims.

C. Motion to Certify

National Union has filed a motion to certify a question to the Texas Supreme Court inviting it to reconsider Jinkins. The Texas Supreme Court's rules make plain that it will not accept a certified issue unless it presents a "question[] of Texas law having no controlling Supreme Court precedent." TEX. R. APP. P. 58.1. The contribution issue in this case does not meet that requirement because Jinkins is a controlling Texas Supreme Court precedent.

III. CONCLUSION

National Union's motion to certify is DENIED. The district court's judgment is AFFIRMED.

---

[10] 896 F.2d 865, 873-74 (5th Cir. 1990).