## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60776

United States Court of Appeals
Fifth Circuit

**FILED**
March 30, 2020

Lyle W. Cayce
Clerk

Consolidated with 19-60201

LORINE MITCHELL,

Plaintiff - Appellee

v.

STATE FARM FIRE; CASUALTY COMPANY,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Mississippi

Before JOLLY, GRAVES, and HIGGINSON, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The underlying dispute in this proposed class action arises between a homeowner and her insurer and presents primarily a question of contract interpretation. State Farm's homeowners insurance policy promised to pay the "Actual Cash Value" of the damaged portion of the home of the insured, Lorine Mitchell. The term "Actual Cash Value," however, is not defined in the policy. The question on appeal asks how that value should be calculated. We must further determine whether the district court properly declined to dismiss Mitchell's claims in tort arising from the same calculation. Finally, we decide

No. 18-60776 c/w
No. 19-60201

whether the district court abused its discretion in certifying a class of homeowners with similar claims to Mitchell's.

Both Mitchell and her insurer, State Farm, agree on one preliminary matter: Actual Cash Value is calculated by taking the cost of replacing a damaged portion of a home and subtracting depreciation from that total cost. But where the two parties differ is on the question that necessarily follows: what costs of the loss should be depreciated?  State Farm argues that in calculating the Actual Cash Value payment, *both* the cost of materials *and* the cost of the labor should be depreciated.  Mitchell, by contrast, argues that *only* the cost of physical materials should be depreciated, not the cost of labor.

For reasons explained below, we find that in the context of a Mississippi homeowners policy that refers to "Actual Cash Value" without further definition, both interpretations are reasonable.  The contract is thus ambiguous.  We must therefore apply one of Mississippi's interpretive canons, which provides that an ambiguous insurance contract is interpreted against the insurance company.  We therefore AFFIRM the district court's denial of State Farm's motion to dismiss with respect to Mitchell's breach of contract claim.

We further find, however, that the district court erred in denying State Farm's motion to dismiss with respect to Mitchell's tort claims.  Because the law on this question of interpreting "Actual Cash Value" in Mississippi was unsettled, State Farm had an arguable basis to depreciate labor costs.  We therefore REVERSE the district court's denial of State Farm's motion to dismiss with respect to Mitchell's tort claims and dismiss those claims.

Finally, we find that the district court did not abuse its discretion in certifying a class of Mississippi State Farm policyholders similarly situated to

No. 18-60776 c/w
No. 19-60201

Mitchell, who received "Actual Cash Value" payments in which labor was depreciated and whose contracts similarly did not define "Actual Cash Value."

In sum, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

I

In the Spring of 2017, a storm struck Waterford, Mississippi, and damaged Lorine Mitchell's home.[1]  At the time, the home was insured by a State Farm homeowners policy.

Mitchell notified State Farm of the damage and made a claim under the policy.  State Farm sent a claims adjuster to inspect the damage, who confirmed that it was covered by the policy and prepared an estimate for the cost of repair.  Mitchell soon thereafter received a payment from State Farm for $646.19.  How State Farm calculated that amount, and whether it was too low, is the crux of this case.

Under the policy to which State Farm and Mitchell agreed, State Farm pays an insured "the actual cash value at the time of the loss of the damaged part of the property" immediately after a claims adjuster confirms coverage and makes an estimate of the cost of replacement.  The term "Actual Cash Value" (ACV), however, is not defined in the policy itself.  Looking outside the policy, Mississippi law defines "Actual Cash Value" as "the cost of replacing damaged or destroyed property with comparable new property, minus depreciation and obsolescence." Miss. Code Ann. § 83-54-5(a).  Consistent with this definition, State Farm explained in a document provided to Mitchell that Actual Cash Value is the "repair or replacement cost of the damaged part of

---

[1] The record does not detail the exact nature of the damage, but for ease of discussion we will refer to the damaged portion of Mitchell's home as simply "the roof."

3

the property less depreciation and deductible." (emphasis omitted). State Farm estimated that the cost to replace the roof would be $3,246.42 and that depreciation amounted to $1,600.23. Her deductible was $1,000. Thus, Mitchell's ACV payment was calculated as $3,246.42 minus $1,600.23 minus $1,000, for a net final total Actual Cash Value of $646.19.

Mitchell objected to the method of State Farm's calculation of her Actual Cash Value. State Farm applied depreciation to the *total* amount necessary to replace Mitchell's roof, including both parts and labor. Mitchell argued that, instead, State Farm should have applied depreciation to the cost of materials only, not to the cost of labor. This method of calculation results, unsurprisingly, in a higher Actual Cash value payout to Mitchell.

Mitchell's unhappiness with State Farm's method of calculation led to this class-action lawsuit on behalf of herself and other Mississippi homeowners who received "Actual Cash Value" payments from State Farm in which the cost of labor (as well as materials) was depreciated when calculating their overall payout. Mitchell brought claims for breach of contract, tortious withholding of insurance payments (both negligence and bad faith), and fraudulent concealment. Mitchell's suit was originally filed in the Central District of Illinois, and federal subject matter jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). State Farm then moved to transfer venue to the Northern District of Mississippi under 28 U.S.C. § 1404(a), and that motion was granted. Once in the Northern District of Mississippi, State Farm filed a motion to dismiss all claims, which the district court denied. The district court also granted certification of the proposed class

No. 18-60776 c/w
No. 19-60201

of Mississippi homeowners.  In this consolidated appeal, State Farm challenges both orders.[2]

## II

We first address the district court's denial of State Farm's motion to dismiss Mitchell's breach of contract claim.  A denial of a Rule 12(b)(6) motion is reviewed *de novo*.  *Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir. 2015), *abrogated on other grounds* by *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927 (5th Cir. 2020).  The court accepts as true "factual matter" in a pleading, but not "legal conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  A complaint must be dismissed unless its well-pleaded factual allegations establish "a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

As we have noted, Mitchell's contract with State Farm entitled her to the "Actual Cash Value" of her damaged roof.  Mitchell argues that State Farm breached the terms of her policy by undercalculating this value and thereby paying her less than she was owed.

The insurance policy at issue is a Mississippi contract insuring a home located in Mississippi, and both parties agree that Mississippi law governs the interpretation of its terms.[3]  We must decide questions of state law as we

---

[2] State Farm petitioned this court to allow an interlocutory appeal of the class certification order under Fed. R. Civ. P. 23(f).  This court granted that petition.  Order, *Mitchell v. State Farm Fire & Cas. Co.*, No. 18-90043 (5th Cir. Nov. 5, 2019).  In addition, State Farm moved to certify the district court's order denying its motion to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b).  The district court granted that motion and certified its order for interlocutory appeal.  State Farm petitioned this court for an interlocutory appeal pursuant to that order, and that petition was also granted.  Order, *Mitchell v. State Farm Fire & Cas. Co.*, No. 18-90049 (5th Cir. Mar. 28, 2019).  The two appeals were consolidated.  *Id.*  Thus, both the certification of the class action and the denial of State Farm's 12(b)(6) motion are properly before this court.

[3] When a diversity jurisdiction suit is transferred under section 1404(a), "the transferee court applies the choice-of-law rules that would have applied in the transferor

believe the Mississippi Supreme Court would hold. *Morin v. Moore*, 309 F.3d 316, 324 (5th Cir. 2002). Mississippi's Creditor-Placed Insurance Act defines "actual cash value" to mean "the cost of replacing damaged or destroyed property with comparable new property, minus *depreciation* and obsolescence." Miss. Code Ann. § 83-54-5(a) (emphasis added). Although the policy at issue is not creditor-placed insurance, both parties accept that Mississippi courts apply this definition to Mississippi insurance contracts generally. *See, e.g.*, *Estate of Minor v. United Servs. Auto. Ass'n*, 247 So. 3d 1266, 1276 (Miss. Ct. App. 2017) ("Actual cash value is the replacement cost of property, less depreciation."). The dispute is over how much to deduct in depreciation.

Under Mississippi law, "ambiguity and doubt in an insurance policy must be resolved in favor of the insured." *Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387, 390 (Miss. 1978) (citations omitted). Thus, if the meaning of "Actual Cash Value" in Mitchell's policy can reasonably be interpreted in two different ways, we will resolve that ambiguity in favor of the reasonable interpretation more favorable to Mitchell.[4]

---

court had the case remained there." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 n.3 (5th Cir. 2012). This case was originally filed in the Central District of Illinois, which would have applied Illinois state choice-of-law rules. The policy at issue does not have an express choice-of-law provision. Under Illinois choice-of-law rules, "[a]bsent an express choice of law, insurance policy provisions are generally 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.'" *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E. 2d 842, 845 (Ill. 1995) (citation omitted). These factors clearly point toward Mississippi law as the governing substantive state law.

[4] In an attempt to avoid the canon that ambiguous terms are construed against an insurance company, State Farm argues that any ambiguity in the term "Actual Cash Value" should not be construed against it because that term has a court-created legal definition borrowed from a statute, which State Farm of course did not draft. But the cases cited by

No. 18-60776 c/w
No. 19-60201

To understand the difference between the two parties' proffered definitions of "Actual Cash Value," we will take a hypothetical destroyed roof as an example. Mitchell's interpretation of "Actual Cash Value" includes depreciation of only the *material* components of the roof. Suppose the hypothetical roof can be replaced for a cost of $5,000 in materials and $5,000 in labor—a $10,000 roof. Suppose that the destroyed roof was 10 years old and expected to last 20 years. Under Mitchell's interpretation, the Actual Cash Value would be $7,500, because $2,500 would be deducted in depreciation (half of the cost of the *materials*).

By contrast, State Farm's interpretation of "Actual Cash Value" includes depreciation of both the materials *and* the labor in constructing the roof. Using the same example, State Farm's interpretation would yield an Actual Cash Value of $5,000, because $5,000 would be deducted in depreciation (half of the *total* cost of replacing the roof).

Since Mitchell's interpretation of "Actual Cash Value" must prevail if the term is ambiguous, we need only determine whether Mitchell's interpretation is a reasonable one—not necessarily the most reasonable. *See State Farm Mut. Auto. Ins. Co. v. Scitzs,* 394 So. 2d 1371, 1372 (Miss. 1981). We find that her definition is reasonable, because it restores an insured to her status at the moment before the damage occurred. In our example, it would give an insured $2,500 to spend on shingles and $5,000 to spend on labor to install them. *Cf.*

State Farm are inapposite because those dealt with situations where language in a contract was dictated by statute and the insurer was legally prohibited from altering that language. Here, the ambiguity in the contract between State Farm and Mitchell arose from the fact that State Farm *chose* to borrow a statutory term and *chose* not to define that term with any greater specificity than it is defined in the statute and existing Mississippi case law. As both parties agree, State Farm has always been free to explicitly state in its Mississippi homeowners policies that Actual Cash Value includes labor depreciation, and it did so beginning with policies issued in September 2016.

7

No. 18-60776 c/w
No. 19-60201

*Hicks v. State Farm Fire & Cas. Co.*, 751 F. App'x 703, 709 (6th Cir. 2018) ("[D]epreciating labor does not make the policyholder whole but rather frustrates the indemnity purpose of [Actual Cash Value] coverage . . . [because] 'the cost of labor to install a new garage would be [the] same as installing a garage with 10 year old materials.'") (citation omitted).[5]

Placing a homeowner in a position identical to the one she was in before the damage to her property accords with Mississippi's definition of Actual Cash Value as "the *cost of replacing* damaged or destroyed property with comparable new property, minus depreciation and obsolescence." Miss. Code Ann. § 83-54-5(a) (emphasis added).[6] Mitchell's definition, which results in paying

---

[5] State Farm relies heavily on out-of-circuit precedents that have found the term "Actual Cash Value" unambiguously to include labor depreciation. But most of these precedents are inapposite because the states at issue define "Actual Cash Value" differently than does Mississippi. *See Hicks*, 751 F. App'x at 710 ("[T]he cases on which [State Farm] relies . . . come primarily from states where the broad evidence rule applies or where the policies at issue expressly define [Actual Cash Value].") (citations omitted). The one exception among federal circuit court and state supreme court decisions is *Graves v. Am. Family Mut. Ins. Co.*, 686 F. App'x 536 (10th Cir. 2017). Interpreting a policy similar to the one at issue here, *Graves* held that labor costs must be depreciated because otherwise an insured who never undertook repairs would "receive a windfall based on labor costs she never incurred." *Id.* at 539. For the reasons already explained, Mitchell's definition of ACV provides the funds necessary to put a homeowner in an identical position to the one she was in before the damage. In our view, that amount reasonably can be considered proper indemnity rather than a windfall.

[6] State Farm argues that Mitchell's definition is unreasonable because it conflicts with the two-payment structure provided in the policy. The policy provisionally provides a second payment (not the subject of this appeal), called Replacement Cost Value (RCV), which would be made after repairs are completed and proof of payment for repairs is submitted within a specified time limit. This second payment provides the depreciation originally withheld from the ACV payment. This payment is capped such that the two payments combined do not exceed the amount the homeowner actually spent on repairs. There is no conflict because under Mitchell's definition, this two-step payment system would still operate. The cost of materials would still be depreciated in the ACV payment. Thus, depreciation would still be withheld, and homeowners would still have an incentive to complete repairs and apply for the RCV payment.

the costs necessary to place a homeowner in the *status quo ante*, is reasonable.[7] Several other courts interpreting the term "Actual Cash Value" where "Actual Cash Value" is defined as "cost of replacement less depreciation" have reached the same conclusion. *See, e.g.*, *Hicks*, 751 F. App'x at 710; *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W. 3d 170, 178 (Tenn. 2019); *Adams v. Cameron Mut. Ins. Co.*, 430 S.W. 3d 675, 679 (Ark. 2013), *superseded by statute*, Ark. Code Ann. § 23-88-106(a)(2).

State Farm's definition of ACV instead views "depreciation" as the reduction in the *appraised* or *market* value of the roof prior to the damage. This definition may be reasonable as well. But it is not so singularly compelling as to make Mitchell's definition of ACV unreasonable. We resolve the dispute in favor of Mitchell under the canon that "ambiguity and doubt in an insurance policy must be resolved in favor of the insured." *Bellefonte*, 358 So. 2d at 390. We therefore affirm the district court's denial of State Farm's motion to dismiss Mitchell's breach of contract claim.

## III

We now turn to the motion to dismiss Mitchell's tort claims for negligence/gross negligence, bad faith, and fraudulent concealment. Once again, we remind that a denial of a Rule 12(b)(6) motion is reviewed *de novo*. *Hines*, 783 F.3d at 200–01. A complaint must be dismissed unless its well-

---

[7] State Farm argues that Mitchell's definition is unreasonable because it is not supported by lay or legal dictionaries. State Farm points out that none of the formulas for depreciating assets found in Black's Law Dictionary explicitly mention excluding labor costs. But one method found in Black's Dictionary, the "replacement-cost depreciation method," calculates the depreciation of an asset by looking to "the price of its substitute." *See* "Depreciation Method," Black's Law Dictionary (11th ed. 2019). This is consistent with Mitchell's definition, which looks to the cost of restoring the *status quo*. We do not rely on this definition for our holding that Mitchell's definition is reasonable; we find only that Black's does not necessitate a finding that Mitchell's definition is *unreasonable*.

No. 18-60776 c/w
No. 19-60201

pleaded factual allegations establish "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Mitchell seeks punitive and extracontractual damages for her negligence and bad faith claims.[8]  We first address punitive damages.  In Mississippi, "[t]he plaintiff has a 'heavy burden' when seeking punitive damages based on a bad faith insurance claim." *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988)).  To win a claim for punitive damages, the plaintiff must establish that: "1. The insurer lacked an arguable or legitimate basis for denying the claim, *and* 2. The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (Miss. 1998) (emphasis in original).  Punitive damages may not be awarded unless *both* of these prongs are satisfied.  *See Bristow*, 529 So. 2d at 622.[9]

---

[8] Although Mitchell presents "negligence and/or gross negligence" and "bad faith" as two separate claims in her complaint, she seeks punitive and extracontractual damages for both.  Mississippi recognizes only one test for establishing punitive damages in a denial-of-insurance case.  *See Pioneer Life Ins. Co. of Ill. v. Moss,* 513 So. 2d 927, 929 (Miss. 1987) ("If an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie.").  Mississippi likewise recognizes only one test for establishing extra-contractual damages. S*ee Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636, 642 (Miss. 2013).  Apparently in recognition of this, Mitchell's briefing addresses her bad faith claim but does not separately address her negligence claim.

[9] There is one limited exception to the rule that punitive damages are unavailable if an insurer had an arguable basis for denying a claim.  Even after finding such an arguable basis, "Mississippi courts have sent the issue of punitive damages to the jury when the insurer's behavior in writing the insurance policy or handling the insurance claim breaches 'an implied covenant of good faith and fair dealing' and rises to the level of an independent tort." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 629 (5th Cir. 2008) (quoting *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 202–05 (Miss. 2002)).  Mitchell did not address this exception in her briefing to this court, raising it for the first time at oral argument.  An argument not briefed on appeal is waived. *Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014).

No. 18-60776 c/w
No. 19-60201

Mitchell's claim founders on the first of these two prongs, so we need not analyze the second. Prior to this lawsuit, the calculation of depreciation when ascertaining Actual Cash Value in homeowners insurance policies like Mitchell's was an unsettled question of Mississippi law.[10] In Mississippi, when the relevant law is unsettled at the time a claim is withheld, that uncertainty provides an "arguable basis" for withholding the claim. *See Gulf Guar. Life Ins. Co. v. Kelley,* 389 So. 2d 920, 923 (Miss. 1980); *see also Gorman v. Se. Fid. Ins. Co.,* 775 F.2d 655, 659 (5th Cir. 1985); *Michael v. Nat'l Sec. Fire & Cas. Co.,* 458 F. Supp. 128, 131–32 (N.D. Miss. 1978). Punitive damages are therefore inappropriate in this case.[11]

---

[10] Mitchell argues that the law was already settled in Mississippi because the issue presented here was decided in the Mississippi Supreme Court case *Bellefonte*, 358 So. 2d 387. We disagree. In *Bellefonte*, the Mississippi Supreme Court interpreted an auto insurance contract that set the limit of liability at "what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation." *Id.* at 389, 390. The court ultimately held that this sentence could be construed multiple ways, and thus no depreciation could be deducted because "the policy provision was ambiguous and must therefore be construed in favor of the insured." *Id. at* 391. But the fact that the court found the word "depreciation" in the particular auto contract at issue to be ambiguous does not decide the merits of this case. The word "depreciation" in the context of calculating Actual Cash Value in a home insurance policy must be interpreted with that particular context in mind, a context different from the contract at issue in *Bellefonte.* *Bellefonte* did not settle the question presented in this case, and for that reason the law in Mississippi was not settled prior to this case.

[11] Mitchell also points out that the Mississippi Department of Insurance (MDOI) issued a bulletin in August of 2017 advising that "[t]here is no statutory law in Mississippi prohibiting the practice of labor depreciation in the adjustment of property loss claims," but that "[i]f such a practice is used, the insurer should clearly provide for the depreciation of labor in the insurance policy." Mitchell argues that although this guidance was issued after this suit was filed, "State Farm has taken no action to come into compliance with the MDOI's instructions" and that from this fact a jury could conclude State Farm lacked an arguable basis to continue to withhold labor depreciation from Mitchell and other class members during the litigation of this case. Although Mississippi courts give deference to the MDOI's interpretation of Mississippi statutes—*see, e.g.*, *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1037 (Miss. 2010)—this bulletin cites no statute or case for its direction that insurers "should clearly provide for the depreciation of labor in the insurance policy." Thus, the bulletin on its own was nonbinding guidance—it did not establish that Mississippi law

No. 18-60776 c/w
No. 19-60201

An arguable basis for withholding a claim payment also precludes any other form of extracontractual damages besides punitive damages. *See United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010) ("Extracontractual damages, such as awards for emotional distress and attorneys' fees, are not warranted where the insurer can demonstrate 'an arguable, good-faith basis for denial of a claim.'"); *Hans Const. Co. v. Phoenix Assur. Co. of N.Y.*, 995 F.2d 53, 56 (5th Cir. 1993) ("An arguable reason . . . shields the insurance company from liability for both punitive damages and extra-contractual damages."). Our holding that State Farm had an arguable basis for depreciating labor costs means that extracontractual damages, like punitive damages, are unavailable. Mitchell's claims for negligence and bad faith therefore cannot provide additional forms of relief in this case.[12]

For these reasons, we REVERSE the district court with respect to its denial of State Farm's motion to dismiss Mitchell's tort claims, and we dismiss these claims.

IV

A.

Finally, we address State Farm's appeal from the district court's order certifying a class. A district court's class certification decision is reviewed for abuse of discretion. *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 380 (5th Cir. 2007). "Whether the district court applied the

---

*requires* this practice. The bulletin therefore did not eliminate State Farm's arguable basis to believe that it could legally depreciate labor without such a disclaimer.

[12] In addition, State Farm moved to dismiss Mitchell's tort claim for fraudulent concealment. If established, fraudulent concealment tolls the statute of limitations. *See* Miss. Code Ann. § 15-1-67; *Windham v. Latco of Miss., Inc.*, 972 So. 2d 608, 613–14 (Miss. 2008). This issue has been rendered moot because the district court certified a class limited to claims that fall within Mississippi's three-year statute of limitations for breach of contract. *See* Miss. Code Ann. § 15-1-49(1).

correct legal standard in reaching its decision on class certification, however, is a legal question that we review de novo." *Id.* (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 408 (5th Cir. 1998)). Although the district court has substantial discretion, the "district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996). Additionally, a "party seeking certification bears the burden of proof." *Id.*

Since we have found that Mitchell's tort claims must be dismissed, the issue of class certification of those tort claims is necessarily moot. We must still decide, however, whether the district court abused its discretion in certifying a class with respect to Mitchell's breach of contract claim. We find no abuse of discretion.

Rule 23(a) requires as prerequisites to class certification that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The district court found these tests to be satisfied and certified a class under Rule 23(b)(3). The class as delineated and ordered by the district court comprises:

No. 18-60776 c/w
No. 19-60201

All State Farm [homeowners][13] policyholders who made a structural damage claim for property located in the State of Mississippi which resulted in an actual cash value payment during the class period from which "non-material depreciation" is still being withheld from the policyholder (i.e., has not been paid back as replacement cost benefits). The class includes policyholders that did not receive an actual cash value payment solely because the withholding caused the loss to drop below the applicable deductible. The class period only includes policyholders that received their first claim payment (or would have received their first claim payment) on or after June 23, 2014 (three years before the filing of the complaint). The class excludes all claims arising under policies with State Farm endorsement Form FE3650 or any other policy form expressly permitting the "depreciation" of "labor" within the text of the policy form. The class also excludes any claims for which the applicable limits of insurance have been exhausted.

B.

State Farm challenges certification on multiple prongs. State Farm's first challenge to predominance is grounded in an argument based on the merits. State Farm argues that Actual Cash Value is an unambiguous term that includes depreciation for labor costs, and thus that its meaning cannot be a predominant issue. We have already discussed and rejected these arguments in analyzing the motion to dismiss Mitchell's breach of contract claim, and they need not be repeated here.

---

[13] The district court ordered that "the class will be limited (and the class definition altered) to include only Homeowners Policy holders."

14

No. 18-60776 c/w
No. 19-60201

1.

More worthy, State Farm challenges the district court's finding of predominance on the ground that, although there is the common question of withholding labor depreciation, that common question will be overshadowed by issues relating to individualized damages suffered by each class member. We all can agree that in determining predominance, the district court must "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). The trial court must "weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016).

Here, the district court indeed recognized that damage amounts would need to be calculated for each member of the proposed class individually, by determining how much money was withheld from their ACV payment as labor depreciation. On the other hand, however, "the necessity of calculating damages on an individual basis will not necessarily preclude class certification." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003)). In *Bell Atlantic*, we held that a key question is whether the calculation of damages for each class member is "susceptible to a mathematical or formulaic calculation," or whether instead "the formula by which the parties

propose to calculate individual damages is clearly inadequate." *Bell Atlantic*, 339 F.3d at 307.

Thus, State Farm argues that damages will not be "susceptible to a mathematical or formulaic calculation." In this connection, State Farm contends that the district court will have to review not only (1) how much labor depreciation was withheld from each class member; but also (2) the *entirety* of the factual circumstances related to the class member's claim. State Farm further argues that this review must include any evidence that State Farm overestimated the cost of replacement. State Farm says that in calculating damages, any overestimation of the cost of replacement by State Farm will have to be subtracted from an insured's damage award, a fact-specific undertaking. In sum, State Farm urges that these considerations preclude a finding of predominance.

State Farm's arguments do not persuade us that the district court erred in finding predominance. There are only two situations in which State Farm may dispute or adjust its initial estimate of the cost of replacement. These two situations occur when an insured makes a claim for the second "RCV" payment[14] and secondly if an insured disputes State Farm's estimate of the cost of replacement.[15] The defined class as certified by the district court

---

[14] The RCV payment, unlike the ACV payment, does not withhold any depreciation. We remind the reader that it is paid only after an insured completes repairs and submits proof of payment for repairs. *See* note 6, *supra*.

[15] As State Farm conceded at oral argument, insureds "don't have to return" any of their ACV payment if they make no claim for RCV payment and if they don't dispute State Farm's estimate of the cost of replacement. This holds true even when the ACV payment is higher than what an insured eventually spends in total repairs, as the Eighth Circuit has explained in reviewing a policy with the same two-payment structure. *See Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374 (8th Cir. 2018) ("If the insured . . . made the repairs for less than the amount of the ACV payment, the insured was not obligated to remit the overpayment to State Farm."). We thus reject State Farm's argument based on the policy's payment cap for the same reason.

excludes insureds who are in either of those situations. The class members neither challenge their cost of replacement estimate nor request RCV payments. Thus, any overestimation by State Farm should not be a factor in determining damage awards. *Cf. Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 376–77 (8th Cir. 2018) ("[I]nsureds were under no obligation to use the ACV payment to actually repair or replace the damaged property, so any overestimation by State Farm simply operates as an error in the insured's favor.").

Thus, in any event, whether State Farm made an error in estimating the cost of replacement for any particular claim is a question separate from this class litigation.[16] Here, we are addressing the claim that State Farm breached its contracts by depreciating labor costs. The calculation of damages relating to this claim is properly constrained to the amount of labor depreciation withheld from each class member's ACV payment.[17] *Cf. id.* at 376 ("[T]he only dispute is over including labor depreciation in the calculation, which is a discrete portion of the formula that is easily segregated and quantified."). We leave it to the judgment of the district court—subject to abuse of discretion, of course—as to how to handle sub-issues that may or may not arise in granting class relief.

---

[16] Cases in which courts have considered the amount actually spent on repairs in assessing damages are distinguishable, as those cases involved challenges to the cost of replacement or requests for RCV payments. Again, the class members in this case do not dispute their cost of replacement or request RCV payments.

[17] State Farm's cited authorities to the contrary are inapposite. Those cases involved either claims by the class members that their cost of replacement had been underestimated or claims requiring class members to prove the proximate cause of their loss. None suggest that individualized appraisal issues must also be considered in a suit dealing solely with a contract interpretation question.

No. 18-60776 c/w
No. 19-60201

In sum, we agree with the district court's finding that Mitchell's proposed formula for calculating the labor depreciation withheld for each class member would be adequate. We also agree with the district court that calculating damages for each class member by using toggle features in State Farm's claim estimation software would be feasible. It is true, of course, that the parties differed in their estimates of how long this process would take, but the district court found that predominance would still be satisfied even if the higher estimate of 15–20 minutes per claim made by State Farm's expert turned out to be true. We find no reversible error in this conclusion, and we leave such details of administering class relief to the judgement of the district court.

2.

Finally, State Farm challenges the district court's finding that this class action is the superior method of resolving this controversy. The two cases that State Farm cites for support both have a crucial difference from this case: the courts there found that "negative-value" suits were not implicated and the lawsuits could feasibly be brought individually. *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 632 (6th Cir. 2011); *Robertson v. Monsanto Co.*, 287 F. App'x 354, 363 (5th Cir. 2008). Here, the district court found that there are over 10,000 relevant claims in the proposed class that are likely to be too small to engage in separate litigation.[18] The district court did not abuse its discretion in finding that the negative-value nature of the claims in this case establishes superiority of the class action.

We thus find that the district court did not abuse its discretion in certifying a class with respect to Mitchell's breach of contract claim.

---

[18] State Farm notes that the district court did not consider the possibility of punitive damages in making this determination, but since we have dismissed Mitchell's tort claims that argument is mooted.

18

No. 18-60776 c/w
No. 19-60201

V

In this opinion, we have found that the term "Actual Cash Value" is ambiguous with respect to the withholding of labor depreciation in Mississippi homeowners insurance policies that provide no further definition of ACV. ACV should therefore be interpreted to have the reasonable meaning most favorable to the insured. That meaning is one in which labor costs are not depreciated.

In addition, we have found that Mitchell's tort claims must be dismissed because State Farm had an arguable basis for withholding labor depreciation. The certification of a class bringing those claims is therefore a moot issue. We have also found that Mitchell's claim for fraudulent concealment is moot.

Finally, we have found that the district court did not abuse its discretion in certifying a class of plaintiffs on the breach of contract claim. We therefore AFFIRM in part, REVERSE in part, and REMAND for further proceedings.